## MARTINO v. HOLZWORTH et al.

### No. 13319.

Circuit Court of Appeals, Eighth Circuit.

Jan. 3, 1947.

George C. Dyer, of St. Louis, Mo. (James A. Ryan, of St. Louis, Mo., on the brief), for appellant.

Harry G. Neill, Jr., of St. Louis, Mo. (John C. Kappel, Jr., of St. Louis, Mo., on the brief), for appellees.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is an action by tenants under Section 205(e) of the Emergency Price Con-

trol Act of 1942 as amended, 50 U.S.C.A. Appendix, § 925(e), to recover penalties and counsel fees. From a judgment for plaintiffs, defendant brings this appeal.

Appellant presents the matters here as follows: (1) admitting all of the facts in the record, the judgment was for the wrong party; (2) abuse of discretion in denying appellant's motion for new trial on the ground of newly discovered evidence; and (3) failure to secure proper waiver or to appoint counsel to represent appellant at the trial.

1. *Judgment for wrong party*. The property was a house within the St. Louis, Missouri Defense-Rental Area. From sometime in 1941 until September 10, 1942, appellant had rented the house to another tenant on a month to month basis beginning on the 10th of the month. Appellees took the house under a like arrangement on September 10, 1942. Up to March 10, 1942, the rental had been sixty-five dollars monthly. Appellant demanded and received seventy-five dollars monthly beginning that date. The successive tenants of appellant utilized the property as a rooming house.

The defenses were (a) that the seventy-five dollar rental was legal and (b) limitations. The defense of limitations is not involved here since it was recognized and applied by the trial court. The defense of legal rental was sought to be sustained by proof of a notice of raise of rental from $65.00 to $75.00 per month. The only fact issue was whether this notice had been given in time to affect the monthly rental beginning February 10, 1942. The evidence was in sharp conflict. There was no dispute that a notice of raise was given but the conflict was as to whether it was delivered to the tenant on February 10, 1942, or later about the eighteenth or twentieth of that month. If given on the tenth, it would be in effect on March 1, the ceiling date. If given later in the month, it would not affect the month beginning February 10 and, therefore, the ceiling rental on March 1 would be sixty-five dollars. This issue was determined against appellant.

This appeal is not predicated on any dispute of facts. The facts upon which appellant relies here are that this property was then and thereafter used as a rooming house by the successive tenants, including appellees. The contention is that, being used as a rooming house by the tenant, appellant had the right, under applicable Regulations, to raise the rent, at the expiration of any month, to the amount to which he raised it.

The particular Regulation urged as giving this right is 1388.1805(e) of Maximum Rent Regulation No. 28.

Regulation No. 28 Part 1388.1801 to 1388.1814 governed maximum rentals in certain Defense-Rental Areas, including St. Louis, Missouri. So far as here pertinent, this Regulation is as follows: 1388.1801 "Scope of Regulation" declared it applicable "to entire structures or premises though used as * * * rooming houses" (1801(b) (3)). The rent charged on March 1, 1942, was fixed as the maximum rent (1804(a)). Provision 1805(e) was as follows:

"(e) Where, at the expiration or other termination of an underlying lease or other rental agreement, housing accommodations or a predominant part thereof are occupied by one or more subtenants or other persons occupying under a rental agreement with the tenant, the landlord may rent the entire premises for use by similar occupancy for a rent not in excess of the aggregate maximum rents of the separate dwelling units, or may rent the separate dwelling units for rents not in excess of the maximum rents applicable to such units."

The just quoted section is the basis of appellant's contention that the judgment was for the wrong party. His supporting argument is as follows. When the testimony showed the tenant was using the property as a "rooming house" and that the increase in rental was at the "termination of a * * * rental agreement," the trial court should have taken judicial notice that it must be occupied either in toto or predominantly "by one or more subtenants or other persons occupying-

under a rental agreement with the tenant"; that such fact situation would present the question whether the rental was governed by that charged March 1, 1942 (Regulation 1388.1804(a) ), or by the rooming-house section (1388.1805(e)); that, since the·Court permitted appellant ("a foreign born citizen") to go to trial without counsel and considering "the quasi-criminal nature of this case" (exaction of a penalty), it was the duty of the Court to cause pertinent inquiry to be made to develop the fact situation; that no such inquiry was made; that failure of the Court so to inquire left a void in the evidence as to what rents the tenant, on March 10, 1942, was receiving from the subtenant roomers; and that, if such rents were $75 or more, the raise in rents by appellant would be authorized under the rooming house section 1388.1805(e).

 This contention must be denied. This Regulation 28, Part 1388, must be construed as a whole when the effect of two parts thereof is being considered. Subdivision 1388.1804 establishes "Maximum Rents." The broad, general provision, is that the maximum rent for "housing accommodations rented on March 1, 1942" is the "rent for such accommodations on that date" (1388.1804(a)). The definition of "housing accommodations" includes rooming houses (1388.1813(a)(6)). This property was rented on March 1, 1942. Subdivision 1388.1805 is entitled and deals with "Adjustments and Other Determinations." This subdivision is somewhat in the nature of exceptions to the general subdivision 1388.1804. When a tenant has introduced evidence showing that property was rented on March 1, 1942, and that he is subsequently being charged more than the rental on that date for the same property and services, he has made out·a prima facie case of violation of the Act. He does not have the burden of negativing·the various situations covered by 1388.1805. That burden is on the landlord. ·

 Assuming but expressly not considering, whether 1388.1805(e) could have the construction contended for, yet it would not be effectively applicable unless two facts, required by it, were shown, to wit, that all or "a predominant part" of this property was sublet and that "the aggregate maximum rents" paid by the subtenants equalled the raised rent ($75.00) paid to the landlord. As to neither of these facts was there any proof. Judicial notice cannot be taken that all or a predominant part of this property was sublet at any particular time. Even if such notice could have been taken, evidence as to the aggregate maximum rents of the subtenants would be lacking. There was no duty upon the trial court to make inquiry as to either of these facts.

The Court determined, in favor of appellees, the one fact (time of notice) disputed at the trial. This, with the other essential undisputed facts, made a case requiring the judgment entered, unless at least one of the two other points raised here by appellant be sustained.

*2. Motion for new trial.* Appellant contends that the trial court abused its discretion in denying the motion for new trial on the ground of newly discovered evidence. This new evidence was an official record in the Office of Price Administration, Registration Statement for Hotels and Rooming Houses, No. 703254, filed August 31, 1942, by the former tenant, Edith Klasing. The here material part of this Statement was the aggregate amount of rents received by her from the subtenants. The existence of the Statement as such is not important but only this aggregate of rents paid by roomers.

 It may be that this "Statement" was not known to appellant at the time of trial. However, Edith Klasing was the first witness at the trial and the information in the material portion of the Statement could undoubtedly have been obtained from her at that time. Her examination revealed that she was conducting a rooming house but no question was asked her as to the rentals received by her from her roomers. Direct evidence of all material matter in the Statement was available in the courtroom at the trial and obviously so. The defect lay not in lack of knowledge of the fact but in ignorance that such fact was material. Clearly, no diligence is here shown as required by the

decisions of this Court (Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 119 F.2d 497, certiorari denied 315 U.S. 808, 62 S.Ct. 793, 86 L.Ed. 1207).

**3. *Lack of counsel.*** The argument is that it was the duty of the trial court to appoint counsel for appellant because this action was for a penalty—a "quasi-criminal action"—and, being such, is governed by the decisions regarding counsel for defendants in criminal cases. The contrary has been recently held by this Court, Crary et al. v. Porter, Price Administrator, 157 F.2d 410, 413.

While not particularly pertinent, it is proper to observe that appellant knew what legal assistance he wished and provided such. Up to time of trial he had counsel who prepared his pleadings and gave attention to preliminary matters. Immediately after judgment he employed another counsel (Mr. Ryan) who prepared and presented a motion to vacate judgment and for new trial which resulted in vacation of the judgment and entry of another judgment for a reduced amount. At once thereafter, he employed additional counsel (Mr. Dyer) and this motion for new trial was filed.

The judgment must be and is affirmed.