**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. GENERAL INDUSTRIES CO.**

No. 10078.

Circuit Court of Appeals, Sixth Circuit.

May 28, 1946.

Morton Liftin, of Washington, D. C. (William S. Tyson and Bessie Margolin, both of Washington, D. C., Charles A. Reynard, Regional Atty., of Cleveland, Ohio, and David O. Walter, of Washington, D. C., on the brief), for appellant.

M. Reese Dill, of Cleveland, Ohio (Glenn O. Smith and M. Reese Dill, both of Cleveland, Ohio, on the brief), for appellee.

712

Before HICKS, ALLEN, and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

The Administrator sought to enjoin the appellee from alleged violation of the Fair Labor Standards Act, 29 U.S.C., § 201 et seq., 29 U.S.C.A. § 201 et seq. The District Court, sitting without a jury, found that the appellee had not violated the Act; that the employees in question were exempt, and refused the relief prayed for.

The Administrator claims that the appellee has refused to compensate four of its employees for overtime work in accordance with the requirements of § 7 and § 15(a) (2) of the Act, 29 U.S.C., § 207(a) and § 213(a), 29 U.S.C.A. §§ 207(a), 213 (a). The pertinent provisions of the controlling statutes, Title 29 U.S.C. § 207(a) (1), (3), § 213(a), 29 U.S.C.A. §§ 207(a) (1, 3), 213(a), read as follows:

§ 207(a). "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

§ 213(a). "The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, * * * (as such terms are defined and delimited by regulations of the Administrator) * * *."

It is conceded that all of the employees are engaged in the production of goods for commerce. Three of them, Jasper Page, Peter Spooner and Fred Stegman, are licensed operating engineers in appellee's steam and electric power generating and heating department. This department is vital to the operation of appellee's business, and is in continuous operation on a three-shift basis. Each man is responsible for an eight-hour shift. Except when the chief engineer, Latteman, is present in the department, which generally occurs on Stegman's shift, each of the three engineers is the sole employee in the power plant during his shift. In the boiler-room, which is a contiguous part of the department, firemen and coal-passers are employed whose duty is to maintain a high and constant steam pressure essential to the work of the power plant. As operating engineers, Stegman, Page and Spooner are in charge of four large steam boilers, three large direct current electrical generators, compressors, pumps, engines and other mechanical equipment. The three engineers are individually responsible during their respective shifts for the operation of this machinery, and for keeping it in good condition. They are required to pack the waterpumps, to wipe and oil the engines, and to make minor emergency repairs. They mop the floors and do everything necessary to keep the plant clean and in proper working condition. They make minor adjustments, read the gauges, and are constantly on watch for indications of trouble. Stegman, who works on the first shift under Latteman, the chief engineer, is regarded as having charge of the department when Latteman is away, but no one else is present during his shift except Latteman. Each of the three men receives a salary in excess of $200 per month and is paid additional straight time for overtime.

The fourth employee, Clarence Payne, is employed in the payroll and tabulating department as assistant paymaster. He has charge of the international business machines equipment and has two assistants who manipulate the machines. Payne sets the machines up to make the desired tabulations by arranging the plug-boards on the tabulators. The time-cards, which are tabulated, carry 280 columns, and each column has 80 possible punches. Many thousands of complex combinations in setting the connections on the plug-board are shown to exist. The type of data obtained

varies and includes preparing, recording, tabulating and furnishing to appellee payrolls for employees as well as records, analyses and reports and other information as desired. In the paymaster's absence Payne is in complete charge of the department. He is compensated in excess of $200 per month and an amount equivalent to straight time overtime for work in excess of 40 hours per week. Payne testified at first that he spent one hour and a half a day in supervision; but he later stated in effect that for some time his work had been changed, and that most of his time was spent with the paymaster in going over procedure, assisting in correspondence, and consulting with his assistants in the tabulating department whenever necessary. It clearly appears from his explanatory testimony that more than 80% of Payne's work is non-manual.

No question is raised as to the validity of the regulations. Two problems are presented: (1) Whether the four employees or any of them are exempted from the Act under the regulations, and (2) whether, regardless of exemption, they have been receiving compensation in accordance with the Act. The pertinent portion of the regulations is printed in the margin.[1]

The Administrator claims that of the six requirements contained in the definition of executive, only that relating to compensation has been complied with as to Stegman, Spooner and Page, and that as to Payne, only the requirement as to compensation has been complied with under the definition of an administrative employee.

 Whether or not employees are exempt under the Act is primarily a question of fact. Fletcher v. Grinnell Bros., 6

[1] Section 541.1.—Executive.

The term "employee employed in a bona fide executive * * * capacity" in section 13(a) (1) of the act shall mean any employee—

(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

(B) who customarily and regularly directs the work of other employees therein, and

(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

(D) who customarily and regularly exercises discretionary powers, and

(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

(F) whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20 per cent. of the number of hours worked in the workweek by the non-exempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment.

Section 541.2.—Administrative.

The term "employee employed in a bona fide * * * administrative * * * ca-

pacity" in section 13(a) (1) of the act shall mean any employee—

(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment; or

(4) who is engaged in transporting goods or passengers for hire and who performs, under only general supervision, responsible outside work of a specialized or technical nature requiring special training, experience, or knowledge, and whose duties require the exercise of discretion and independent judgment.

Cir., 150 F.2d 337, 340. The burden of proving that an employee is exempt rests upon the one who claims the exemption. Smith v. Porter, 8 Cir., 143 F.2d 292, 294. The District Court, in carefully separated findings of fact, determined that the work of the three engineers met each of the six tests prescribed by § 541.1, and that that of the assistant paymaster met the test imposed by § 541.2. These findings may not be set aside on appeal unless clearly erroneous. United States v. Madsen Construction Co., 6 Cir., 139 F.2d 613, 615.

■ The case of the engineers is one of the border-line cases which necessarily exist even in small industrial organizations. The District Court found as a fact that Stegman, Page and Spooner were employed as foremen or supervisors of the department, with power to supervise the work of firemen and coal-passers in the boiler-room; that they customarily and regularly directed the work of other employees in the department, and customarily exercised discretionary powers. We think these findings are not sustained by the evidence. The work done by the engineers was highly skilled mechanical work. While the machinery was vital to the plant, dangerous and complicated, its operation involved no exercise of discretion, but merely the proper application of the skilled engineering training which these men had received. Although the three engineers were responsible for the proper operation of the machinery during their shifts, and, as the factory manager testifies, "in charge of management of the property," none of them could fire or hire or give orders to any man in the boiler-room. Latteman, the chief engineer, who was present at the plant during one shift and on call 24 hours a day and seven days a week, was in full charge of the department. While Latteman might act on information from Stegman, Page, or Spooner, during the period involved, orders emanated only from him. It is not shown that Stegman, Page or Spooner ever made any recommendation concerning the change in status of the boiler-men. It was essential to have proper steam pressure in the boiler-room, but if the three engineers desired in this connection to secure action from the firemen and coal-passers, they had to secure an order from Latteman. This evidence is not contradicted.

■ The most pertinent test for determining whether one is a bona fide executive is the duties which he performs. Walling, Adm'r v. Yeakley, 10 Cir., 140 F.2d 830, 832. The difficulty of the immediate problem arises from the fact that the regulations make no allowance for the employment involved. In the shift from hand labor to mechanized industry the work of men is increasingly done by machines. Time was when engineers responsible for the work of such a vital operation probably had men under them perform operations now done entirely by machinery. Here no employee except the engineer himself is present in the engine-room during the shift. The engineer thus does not supervise, control, or manage any other employee. But it is an essential of executive duties, both in common parlance and under the regulations, that there be active participation in controlled supervision and management of the business. Arkansas Amusement Corp. v. Kempner, 8 Cir., 57 F.2d 466, 473; Stanger v. Glenn L. Martin Co., D.C., 56 F.Supp. 163, 166; Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, 517. Cf. Emmerglick v. Philip Wolf, Inc., 2 Cir., 138 F.2d 661, 662; Schanck v. Lehigh Valley R. R., City Ct., 52 N.Y.S.2d 491, 492.

■ The Administrator might well have recognized the importance of responsibility for complex mechanical equipment and have included in the regulations a paragraph to the effect that as a test of executive work the management of vital, dangerous and complicated machinery is equivalent to the management or supervision of employees, but he has not done so. The Congress has confided to the Administrator the framing of the regulations and the courts may not add provisions to those embodied in statute even though such provisions appear from a practical standpoint to be reasonably required.

■ As to Payne, a different situation is presented. He was in direct authority over two men and five women who performed the actual manual work of his de-

partment. The setting of the plugs which he himself performed was a highly intelligent piece of work, involving far more than routine mechanical skill. The District Court's finding that Payne regularly and directly assisted an employee employed in a bona fide executive or administrative capacity in non-manual work, and also that he performed only under general supervision responsible non-manual office work requiring the exercise of discretion and independent judgment is strongly supported by the record. Payne's case falls squarely within § 541.2 and he is exempt from the operation of the statute.

These conclusions would seem to require reversal of the judgment as to Stegman, Spooner and Page, and affirmance of the judgment as to Payne. However, the circumstance that the three engineers are not exempt does not of itself establish that the District Court erred in denying the injunction. In an action to restrain violations of the Act the burden of proof rests on the Administrator to establish that the statute has been violated as to the engineers. The District Court found no evidence of intention to violate the act and affirmatively found that the employer had compensated the engineers in accordance with the statute. There was a conflict of evidence on this point but the finding of the District Court is supported by substantial evidence. While the men state that they received no overtime, their testimony is lacking in circumstantial detail, while the testimony of the factory manager and one other witness is precise upon the exact point. The salary of these men was formerly paid on an hourly basis. A change to a salary basis was negotiated between the union and the employer, the salary being calculated to include an allowance of time-and-one-half for overtime. The men concede that there was a controversy with the union over their status, and that the shift from hourly to monthly compensation followed. The pay was figured in a shift from hourly pay to monthly salary, at 80 cents an hour, which was the amount they would have earned at the regular hourly rate prior to February 1, 1941, plus overtime at the rate of time-and-one-half the regular hourly rate of pay

for hours worked in excess of 40 for a scheduled work-week of 51 hours. It is not shown that any of these men ever worked more than eleven hours overtime each for the four weeks included in the monthly salary period, and for this time their salary includes an allowance of one-and-one-half pay for overtime. The District Court was correct in its conclusion that the appellee has compensated its non-exempt employees for overtime employment in accordance with the requirements of the Act, and the injunction was properly denied.

The judgment of the District Court is affirmed.