**UNITED LABOR COMMITTEE et al. v. WOODS, Housing Expediter.**

**No. 508.**

United States Emergency Court of Appeals.

Heard at Boston July 6, 1949.

Decided July 12, 1949.

Robert M. Segal, Boston, Mass. (Arthur J. Goldberg and Herbert S. Thatcher, Washington, D. C., on the brief), for complainants.

Charles P. Liff, Chief, Appeals Section, Washington, D. C. (Ed Dupree, General Counsel, Washington, D. C., both of the Office of the Housing Expediter, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MARIS, Chief Judge.

This is a complaint filed against the Housing Expediter by a representative group of tenants in the Eastern Massachusetts Defense-Rental Area under Section 204(e) (4) of the Housing and Rent Act of 1947, as amended by Section 203(e) of the Housing and Rent Act of 1949, 50 U.S. C.A.Appendix, § 1894(e) (4). The decision of the Housing Expediter which is complained against was incorporated in

968

Amendment 84,[1] issued April 12, 1949, to the Controlled Housing Rent Regulation, under which general increases in maximum rents ranging from 2% to 17% were authorized for housing accommodations in structures containing four or less dwelling units located in 76 cities and towns in the Eastern Massachusetts Defense-Rental Area.

It appears that Rent Advisory Board No. 1 of the Eastern Massachusetts Defense-Rental Area in the latter part of 1948 conducted a survey in the municipalities in question with the assistance of the staff of the Expediter to determine the amount by which property taxes had increased in each of these municipalities since 1942. Upon completion of the survey and without holding a public hearing as provided by Section 204(e) (4) (A) of the act, the local board on March 11, 1949 submitted its recommendation to the Expediter pursuant, as it stated, "to Section 204(e) (3) of the Housing and Rent Act" by which it recommended the increases in maximum rents for the municipalities in question which, with two exceptions, were later incorporated by the Expediter in Amendment 84. With its recommendation the board submitted the evidence which it had considered, consisting of the results of the tax survey which it had conducted. The increases in maximum rents which the board recommended were based solely upon the increases in taxes which the survey indicated had taken place in the municipalities in question since 1942.

It may be noted at this point that the board initiated its investigation, and made its recommendation, under the provisions of the Housing and Rent Act of 1947 and the applicable administrative regulations thereunder, as they existed prior to the amendments of that act made by the Housing and Rent Act of 1949, 50 U.S.C.A. Appendix, § 1881 et seq. However, the Expediter issued Amendment 84 to the regulation after the 1949 amendments of the act had been enacted.

The complainants attack upon two grounds the action of the Expediter which was incorporated into Amendment 84.

The first ground relates to the procedure whereby the rent increases represented by Amendment 84 were effected. Conceding that the Expediter is empowered by the act to grant general rent increases upon his own initiative, the complainants contend that in this case the action was not upon his own initiative, but that on the contrary he merely approved and put into effect a recommendation by a local board which, they strongly urge, was fatally defective in that the board did not comply with the procedural requirements of Section 204(e) (4).[2] The Expediter, conceding that the procedural requirements of that subsection were not met by the local board, asserts that the recommendation which the board made was not intended to be made under that subsection but was merely an advisory recommendation which, as the board stated, was made under Section 204 (e) (3) and which he might approve or disapprove in his discretion without judicial review of his action by this court, as the act stood prior to the 1949 amendments. Accordingly, he asserts, his acceptance of the recommendation was action "on his own initiative" within the meaning of the statute, which it was within his power to take.

In order to understand the question thus raised, it becomes necessary to refer briefly to the provisions of the law involved and their chronology. Local advisory boards were first provided for by the Housing and Rent Act of 1947, Section 204(e) (1) (B) of which authorized them to make recommendations as to the "adequacy of the general rent level" in the area. The Expediter was, by Section 204(b) of the 1947 act, empowered to make adjustments necessary "to correct inequities or further to carry out the purposes and provisions" of the legislation. Substantially similar provisions were retained in these subsections as they were amended by the 1948 act. That act also amended Section 204(e) (3) of the 1947 act to read:

"Upon receipt of any recommendation from a local board, the Housing Expediter shall promptly notify the local board, in writing, of the date of his receipt of such

---

[1] 14 F.R. 1823.

[2] See In re Recommendation of Norfolk Local Advisory Board, Em.App.1948, 169 F.2d 277.

recommendation. Except as provided hereinafter in this subsection, within thirty days after receipt of any recommendation of a local board such recommendation shall be approved or disapproved or the local board shall be notified in writing of the reasons why final action cannot be taken in thirty days. Any recommendation of a local board appropriately substantiated and in accordance with applicable law and regulations shall be approved and appropriate action shall promptly be taken to carry such recommendation into effect."

Section 204(e) (4) as amended by the 1948 act provided, for the first time, for recommendations by local boards to be made after due notice and public hearings, which if not approved by the Expediter, automatically came to this court for approval or disapproval.

In June 1948, following the enactment of the 1948 law, the Expediter issued his "Handbook for Rent Advisory Boards," having the effect of a regulation,[3] in which he defined the procedure to be followed by local advisory boards. He interpreted the law as amended by the 1948 act as providing for two different kinds of recommendations by such boards. The first consisted of those made under Section 204(e) (4) after public hearing and upon a formal record which, if not approved, were to be brought to this court for final action. After outlining the procedure relating to recommendations of this sort, the Expediter in his Handbook defined the other type of recommendations in these words:

"In addition, it should be noted that Rent Advisory Boards are not limited to the procedure set forth above in making recommendations for decontrol or for adjustments in the general rent level. Under the authority of Section 204(e) (3) of the Housing and Rent Act of 1948, boards have the alternative of continuing to use the method of making recommendations heretofore available, namely: The board submits its recommendation and its evidence to the Housing Expediter and there is no requirement for hearings and preparation of a record. * * * The Housing Expediter approves or disapproves the recommendation based upon whether it is appropriately substantiated and in accordance with applicable law and regulations. The approval or disapproval of the Housing Expediter is final under this method and there is no referral to the Emergency Court of Appeals."

In the face of this interpretation the Congress in enacting the 1949 amendments retained the provisions of Section 204(e) (3), adding only certain language not here relevant. Under well known principles, the reenactment of a statute which has been construed in a certain manner by the officer charged with administering it is weighty evidence that Congress approved the administrative interpretation.[4]

When the board submitted its recommendation to the Expediter, it expressly stated, as we have seen, that it was doing so under Section 204(e) (3). It announced publicly also that the recommendation would not be effective until and unless approved by the Expediter. It made no attempt to make a recommendation under the more formal procedure of Section 204 (e) (4). This action reflects clearly the intent of the board to pass on to the Expediter the final decision as to whether the recommended increases in maximum rents should be effectuated.

The Expediter insists that his promulgation of Amendment 84 was based upon his own judgment, fortified as it was by the evidence that the board submitted. That he has power to make general adjustments of maximum rents on his own initiative is conceded by complainants. In doing so, of course, he may rely upon relevant evidence from any source. He may likewise consider recommendations which come to him from any source and give them such weight as he finds they are entitled to. It accordingly matters not that in Amendment 84 the Expediter indicated that his action was "based upon the recommendation of the Local Advisory Board". For the fact remains that the recommenda-

[3] In re Jamestown Defense Rental Area, Em.App.1948, 171 F.2d 708.

[4] Helvering v. Winmill, 1938, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52.

tion was made under Section 204(e) (3) as interpreted by the Expediter and not under Section 204(e) (4), and accordingly the evidence which the board transmitted with its recommendation was submitted, not as a foundation for judicial review, but merely as an aid to the Expediter in the exercise of his discretionary judgment.

■ Keeping in mind Congress' implied approval of the Expediter's interpretation of Section 204(e) (3), the Expediter's statutory authority to act on his own initiative, the board's statement that its submission was under Section 204(e) (3) and its action in proceeding in accord with the Expediter's interpretation of that subsection, it seems clear to us that the procedural objections of complainants cannot be sustained, that the board never contemplated such a proceeding as might come to this court under Section 204(e) (4), that it intended only to seek the Expediter's discretionary judgment and that the Expediter, examining its recommendation and the evidence supporting it, determined, on his own initiative, that the regulation should be amended, as it was by Amendment 84.

Complainants' argument that the Expediter could not adopt the recommendation of the local board in this case is based on their interpretation of Section 204(e) (4) of the Housing and Rent Act of 1947, as amended. That section states that a public hearing must have been held in order that a recommendation of a local board "shall be deemed to be appropriately substantiated" for the purposes of Section 204(e) (3), which in turn directs that the Expediter shall approve recommendations so substantiated. The two sections thus require a public hearing before the local board as a prerequisite to the making of a recommendation which the Expediter must approve if properly supported by the evidence, but nothing in them precludes the Expediter from voluntarily following a recommendation of a local board which he believes has merit, though made without a prior public hearing. Whether the recommendation thus followed was technically made under Section 204(e) (3), as the Expediter interprets that subsection, or was made by the local board under the general

power to make recommendations conferred on it by Section 204(e) (1) is, we think, wholly immaterial. In such a situation, i. e., when the Expediter voluntarily follows a recommendation which he cannot be compelled to approve, it seems clear that he is acting on his own initiative. The 1949 amendment to Section 204(e) (4) gives to representative groups of interested parties the right to review action taken by the Expediter on his own initiative with respect, inter alia, to a general adjustment of rents. Accordingly we have jurisdiction of the present complaint.

In contending that the Expediter was not acting on his own initiative in this case, the complainants make much of the fact that the rent adjustments authorized by Amendment 84 were, except in two instances, identical with those recommended by the local board. This, say the complainants, is proof that the Expediter did not make an independent decision as to this matter. But the argument loses its force when we remember that the final figures were arrived at by purely mathematical computations, the formula for which was set out by the Expediter in his Handbook. It was the data disclosed by the survey which determined what adjustments should be made. No matter who made the computations, the result would have been the same. We hold that in adopting Amendment 84 the Expediter was acting on his own initiative, after considering a purely advisory recommendation.

■ We turn then to the complainants' second ground of attack upon the Expediter's action, which is that Amendment 84 is invalid because the increases in maximum rents which it authorizes do not conform to the standards for such increases which are laid down by the act. The complainants point to Section 204(b) (1) of the Housing and Rent Act of 1947 which, as amended by Section 203(b) of the Housing and Rent Act of 1949, provides:

"* * * That the Housing Expediter shall, by regulation or order, make such individual and general adjustments in such maximum rents in any defense-rental area

or any portion thereof, or with respect to any housing accommodations or any class of housing accommodations within any such area or any portion thereof, as may be necessary to remove hardships or to correct other inequities, or further to carry out the purposes and provisions of this title * * *. In making and recommending individual and general adjustments to remove hardships or to correct other inequities, the Housing Expediter and the local boards shall observe the principle of maintaining maximum rents for controlled housing accommodations, so far as is practicable, at levels which will yield to landlords a fair net operating income from such housing accommodations. In determining whether the maximum rent for controlled housing accommodations yields a fair net operating income from such housing accommodations, due consideration shall be given to the following, among other relevant factors: (A) Increases in property taxes; (B) unavoidable increases in operating and maintenance expenses; (C) major capital improvement of the housing accommodations as distinguished from ordinary repair, replacement, and maintenance; (D) increases or decreases in living space, services, furniture, furnishings, or equipment; and (E) substantial deterioration of the housing accommodations, other than ordinary wear and tear, or failure to perform ordinary repair, replacement, or maintenance."

The complainants' contention is that the foregoing provisions of the act establish, as a statutory standard to which the Expediter must conform, that general adjustments in maximum rents must be directed toward affording to landlords a "fair net operating income" from their housing accommodations. Hence, they say, a general adjustment in rents may not be regarded as valid or in conformity with the act unless it is made to appear that it will, if authorized, yield to landlords a fair net operating income and no more. In this case the record is silent as to the net operating position of landlords in the communities involved either before or after the rent increases authorized by Amendment 84, the evidence being directed solely to the increase experienced since 1942 in one particular item of the landlords' operating expense, namely, property taxes. While conceding that such taxes have increased in the various communities in the defense-rental area as indicated by the tax survey which is in evidence, the complainants assert that these increases in this item of operating expense may have been offset by decreases in other operating expenses or increases in rental income resulting from reduced vacancies to such an extent as to render an increase in maximum rents at this time unnecessary and in violation of the statutory standard in that it may afford landlords more than a fair net operating income. The complainants' contention is, in other words, that the act does not contemplate a general upward adjustment of maximum rents upon the basis of an increase in property taxes alone but permits such an adjustment only upon a showing that the landlords' net operating position, considering all items of income and expense, has deteriorated to a point where they are not receiving a fair net operating income from their housing accommodations.

We may assume, without deciding, that under the act as it now stands the sole statutory standard for making general adjustments in maximum rents to remove hardships or to correct other inequities is, as the complainants contend, to maintain the maximum rents at levels which will yield to landlords a fair net operating income from their housing accommodations. We may also assume that a fair net operating income was intended by Congress to be not less than that enjoyed by landlords generally in the area at the inception of rent control. For, even if the statutory standard is thus construed, the complainants have not convinced us that in promulgating Amendment 84 the Expediter violated or departed from that standard. It will be observed that in the statute immediately after laying down this standard Congress set out four relevant factors to be considered, among others, by the Expediter in determining whether maximum rents are yielding a fair net operating income to landlords. The first of these is "Increases

972

in property taxes". Certainly, then, the consideration of this factor, which Congress has expressly pointed out to the Expediter, should not in itself operate to invalidate a rental increase authorized by him in the light of it. On the contrary, we think that evidence of a general increase in property taxes during rent control fairly supports the inference, in the absence of evidence to the contrary, that the fair net operating income of landlords has been impaired at least to the extent of such tax increase. This inference would, of course, disappear in the face of satisfactory evidence that offsetting increases in income or decreases in other operating expenses had actually taken place in the particular rental area. But the burden of establishing such invalidating facts is upon the ·complainants, and they have wholly failed to meet that burden.

We conclude that the evidence in the record and the inferences fairly to be drawn therefrom justify the decision of the Housing Expediter to increase maximum rents in the Eastern Massachusetts Defense-Rental Area to the extent embodied in Amendment 84.

An order will accordingly be entered approving the decision of the Housing Expediter embodied in Amendment 84 to the Controlled Housing Rent Regulation.