**WOODS v. OAK PARK CHATEAU CORPORATION et al.**

No. 9821.

United States Court of Appeals
Seventh Circuit.

Jan. 4, 1950.

Rehearing Denied Jan. 31, 1950.

John F. McCarthy, Robert E. Levin, Chicago, Illinois, for appellants.

Ed Dupree, General Counsel, Hugo V. Prucha, Assistant General Counsel, Benjamin I. Shulman, Attorney, Benjamin Freidson, Attorney, Office of the Housing Expediter, Washington, D. C., Wm. S. Kaplan, Office of the Housing Expediter, Chicago, Ill., for appellee.

Before KERNER, LINDLEY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This is another action in which plaintiff, pursuant to § 206(b) of the Housing and Rent Act of 1947 as amended, 50 U.S.C.A. Appendix, § 1881 et seq., sued defendants to enjoin them from charging and collecting over-ceiling rents, and for a refund of all amounts collected in excess of the maximum rents established by the Housing Expediter pursuant to the Act. The premises involved are within the Chicago Defense-Rental area, and consist of a 14-story fireproof building containing 130 dwelling units. The defense pleaded was that the Act violated the Fifth Amendment to the Constitution of the United States, and that the accommodations in question were hotel housing accommodations exempt from federal rent control.

The case was tried by the court without a jury. The trial judge sustained the Act as constitutional, made special findings of fact favorable to plaintiff upon which he rendered his conclusions of law, and entered a judgment enjoining defendants as prayed for in the complaint. To reverse the judgment, defendants appeal.

Two questions are presented. First. Does the Housing and Rent Act of 1947 as amended violate the Fifth Amendment? Second. Did the court err in holding that the particular units in question were not exempt from federal rent control?

First. Defendants admit that the Constitution does not forbid "different treatment of the members of different classes," and that it "does not forbid classification of persons affected by Congressional Acts," yet they insist that § 204(b) of the Act as amended, 50 U.S.C.A.Appendix, § 1894(b), violates the Fifth Amendment in that it sets up an unreasonable classification, effects an arbitrary discrimination among owners based on their tenants' willingness to execute such leases, and fails to show a reasonable relationship between the discrimination and the purposes of the statute. True it is, that § 204(b) does provide certain benefits by way of exemptions and increased rents for owners whose tenants are willing to execute 15% increase leases, but it is clear that this section of the statute extends an equal opportunity to all landlords and all tenants to enter into such leases. In this situation, it seems to us that it is enough to say, "This alone is adequate answer to the objection." Woods v. Miller Co., 333 U.S. 138, 145, 68 S.Ct. 421, 425, 92 L.Ed. 596. We must sustain the Act as valid.

Second. The exemption from rent control for accommodations in establishments providing customary hotel services which were commonly known as hotels was first enacted into law in the Housing and Rent Act of 1947. Section 202(c) of that Act, 50 U.S.C.A.Appendix, § 1892(c), defines controlled housing accommodations and the exceptions to such control as follows: "The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—(1) those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; * * *" By § 204(d) of the Act, the Housing Expediter is authorized to issue such regulations and orders, consistent

with the provisions of the Act, as he may deem necessary to carry out the provisions of § 204 and § 202(c). Pursuant thereto, the Expediter promulgated a regulation (12 F.R. 4331) framed in the same language as that of the Act, except that it contains the date "June 30, 1947," the effective date of the 1947 Act.

Before proceeding to discuss whether the court erred in holding that the units in question were not exempt, we must consider defendants' claim that the insertion by the Expediter of the June 30, 1947 cut-off date, in his regulations is "an attempt to defeat an exemption conferred by the Act." The argument is that the exemption arose from the factual situation at the time of the overcharges rather than from the factual situation on June 30, 1947.

We must bear in mind that the effective date of the Act was June 30, 1947, and that the Expediter's interpretation of § 202(c) is entitled to great weight, Skidmore v. Swift & Co., 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124, particularly "when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion," Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796. And when Congress reenacted the 1947 Act, after many of the provisions of the Act had been interpreted by the courts and made the subject of administrative regulation, it constituted ratification by Congress of the earlier administration of the Act and regulations. Pinkus v. Porter, 7 Cir., 155 F.2d 90, and United Labor Committee v. Woods, Em.App., 175 F.2d 967. And since we entertain no doubt that Congress intended to confer an exemption upon those accommodations which satisfied the statutory requirements on June 30, 1947, it follows that the court did not err in concluding that the test date for determining decontrol of housing accommodations under the Act was June 30, 1947.

We now consider defendants' principal contention. They say that plaintiff introduced no testimony and the court made no finding "on the problem of what are customary apartment or hotel services." They contend that this 14-story building was oc-cupied by persons who were provided customary apartment or residential hotel services, hence the apartments were exempt. They cite Woods v. Western Holding Corp., 8 Cir., 173 F.2d 655, and Woods v. Benson Hotel Corp., 8 Cir., 177 F.2d 543, 544.

Claiming that the trial judge ignored the evidence, they assert that the evidence shows that on the first floor of the premises is a lobby with a desk switchboard and extensions to each apartment, manned by four clerks who gave 24-hour service each day; that morning calls were made to the tenants who wished to be awakened and messages were taken for the tenants who were not in their apartments; that mail and packages were received and delivered, and laundry was sent out; that while it is true that no uniformed bellboys were employed, trunks, suit cases, packages, and the like were carried by housemen and engineers. They argue that the evidence showed that each apartment was carpeted and furnished, and the furniture repaired by workers hired for that purpose; that there was daily maid service; that the linen was laundered, and each unit received towels, sheets, pillow slips, bath mats, shower curtains, table pads, blankets and spreads; and that the furnishing and availability of these services classified the building as an apartment or residential hotel.

We have considered the cases cited by defendants. They are readily distinguishable upon the facts. In the Western Holding case, supra, it appears that the defendant had hotel licenses, used the usual and customary hotel registration cards, and had the establishments listed in the classified telephone directory under the classification "hotels" and not apartments. The ledgers in which all guests were listed, were headed "Hotel Guest Record." They had regular uniformed bellboys and consistently dealt with the public as hotels and held themselves out for many years as hotels, having accommodations at all times for transient guests, and there was expert testimony that the buildings were considered as hotels in Kansas City. Upon these and other facts found by the court, the court concluded that the establishments were commonly known as hotels in the community in which

they were located, and were occupied by persons who had been provided customary hotel services within the meaning of the 1947 Act.

We agree, as did the court in the Benson case, that if the hotel is in general a "furnished service establishment," it is decontrolled. But in that case the court found as a fact that "Hotel Leamington" had always been commonly known in the community as a hotel and had always been operated for both transient and resident guests to whom all of the services "which are ordinarily or customarily provided by hotels in the community in which the Hotel Leamington was situated were either furnished or were available to the occupants upon demand within a reasonable time."

In our case the issue was whether the housing accommodations were in an establishment commonly known as a hotel in the community in which it was located. All the evidence of the parties was directed to that issue. In this connection it is well to remember that exemptions from the operation of an Act of Congress are to be narrowly construed, A. H. Phillips Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, and that the ultimate determination of whether the premises were exempt, was primarily a question of fact. On that question the burden rests upon defendants to prove that the building came within the decontrolled exception, that is to say, that it was a hotel occupied by persons who were provided customary hotel services, Walling v. General Industries Co., 6 Cir., 155 F.2d 711, 714, and the burden is upon the party attacking a finding to show that it is clearly wrong.

To be sure, the quality of service available to the tenants is not to be compared with the services available in a purely first class transient hotel; nevertheless, the question is whether or not defendants furnished their tenants or made available to them the type of services usually furnished by hotels in the community in which the premises are located. And as to the adequacy of findings, we must bear in mind that the ultimate test is whether the findings are sufficiently comprehensive and pertinent to the issues in the case so as to provide a basis for decision, and whether they are supported by the evidence. Shapiro v. Rubens, 7 Cir., 166 F.2d 659, 665. Here the findings of the court, presently to be shown, properly and adequately determined the issue whether the housing accommodations were in an establishment commonly known as a hotel in the community in which it was located, and fairly presented the ultimate facts upon which the court based its decision.

The court found *inter alia* that the defendant, Oak Park Chateau Corporation, purchased the premises in 1945, and has since rented and leased units therein to various tenants as and for housing accommodations, and that in June, 1947, it listed the premises in the Chicago Classified Telephone Directory, not as a hotel but under "Apartments," as "The Mozart Apartments"; that on June 30, 1947, the canopy at the entrance of the building, a sign above the entrance door, and a sign on the east wall of the building each contained the words "Mozart Apartments"; that the letterheads and stationery used by defendants and also the report of the boiler inspector of the city of Chicago contained the words "Mozart Apartments," and that the people in the community referred to the building as "Mozart Apartments."

The court also found that the linens such as bed sheets, pillow slips and towels, except in very few instances, were not furnished nor available to the tenants; that no bellboy service was available or furnished; that the maid service provided was not the customary maid service for hotels in the community; and that "The Mozart Apartments" was not commonly known as a hotel in the community in which it is located. It concluded that the apartments were suitable for living and dwelling purposes and constituted housing accommodations under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., as amended by the Housing and Rent Act of 1947, as amended, and that defendants had failed to prove that the premises were exempt.

We need only further to say that we have examined the entire record and

have been convinced that it contains substantial evidence to support the findings. And since the findings are based upon evidence in part disputed, we are not at liberty to disturb them. Woods v. Fliss, 7 Cir., 168 F.2d 612; Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958; Woods v. Western Holding Corp., supra; and Woods v. Benson Hotel Corp., supra.

Affirmed.