**WOODS, Housing Expediter, v.
PIELET et al.**

No. 10222.

United States Court of Appeals
Seventh Circuit.

Argued Feb. 19, 1951.

Decided Feb. 28, 1951.

454

Edward R Litsinger, Andrew W. Gatenbey, John D. Clancy, Jr., Chicago, Ill., for appellant.

Ed Dupree, Gen. Counsel, Leon J. Libeu, Asst. Gen. Counsel, Benjamin Freidson, Sp. Litigation Atty., Office of the Housing Expediter, Washington, D. C., William S. Kaplan, Office of Housing Expediter, Chicago, Ill., for appellee.

Meyer J. Myer, Chicago, Ill., for appellee S. Brietowich.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from two judgments, entered May 19, 1950, in separate suits instituted under the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1881, et seq. One judgment was entered in an action instituted by the Housing Expediter under Sec. 206 of the Act, and enjoined the defendants from accepting or receiving rent in excess of the maximum rent established and prescribed by the Act and directed that the defendants make refund to thirty designated tenants in the total amount of $3,351.15. The other judgment was entered in an action instituted by S. Brietowich and ten other tenants under Sec. 205 of the Act, in which treble damages in the total amount of $4,377.84 were awarded. Plaintiffs in this action were also awarded attorney fees in the sum of $1,000.00. The cases were consolidated in the court below and are here in the same manner. The cases were referred to a Master-in-Chancery who, after hearing, made a report in each case, including findings of fact, unfavorable to the defendants. Such reports were approved by the court, which also made in each case its findings of fact and conclusions of law upon which the judgments appealed from were predicated. In each of the judgments there were included as taxable costs, fees of the Master-in-Chancery in the sum of $1,050.00, with a proviso that the payment of such cost under either of the judgments would constitute a satisfaction of both.

The principal question on this appeal is whether the District Court properly found that the housing accommodations in question were not exempt from rent control under Sec. 202(c) (1) of the Act. That section excepts from control "Those housing accommodations, in any establishment * * * which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services.

such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service".

Other questions raised are that the court erroneously ruled that the burden of proof was on the defendants to bring themselves within the statutory exception, that the court erred in permitting the plaintiffs in each suit to file amended complaints covering a period subsequent to the filing of the original complaints, that the court erred in the Expediter's suit in allowing and taxing as costs to be paid by the defendants a fee for the Master-in-Chancery in the sum of $1,050.00, that the court in the tenant suit erred in awarding treble damages and in allowing as part of the judgment fees for plaintiffs' attorneys in the amount of $1,000.00.

The accommodations in question consist of thirty-one apartment units contained in a three-story brick building located at 3311–19 West Washington Blvd., Chicago, Illinois. The building in reality is divided into five sections, each of which has a separate address, with no halls or passageways connecting the separate parts. There is no lobby in the building and the tenants in the different sections obtain their mail in boxes located in a small vestibule at the entrance of each section. Employees consist of a resident manager, janitor, a full-time maid and a part-time maid. There is no central telephone, secretarial or desk service, bellboy or regular package-delivery service. No soap, toilet tissue or stationery is furnished. Decorating has not been furnished for a number of years, and incidental services such as window washing are performed by the tenants. Occupancy is of a permanent character.

The District Court in each case found that on June 30, 1947 "the premises were not commonly known as a hotel in the community in which they were located," and "the occupants of the premises were not provided customary hotel service." Upon these findings the court concluded that the accommodations did not come within the statutory exception.

█ No good purpose could be served in a detailed discussion of defendants' principal issue in view of numerous decisions, and particularly those of this court in Woods v. Oak Park Chateau Corp., 7 Cir., 179 F.2d 611, and Adler v. Northern Hotel Co., 7 Cir., 180 F.2d 742. Under those decisions and others which could be cited, it is hardly open to question, as the statute so clearly sets forth, that the basic issue is whether the establishment "is commonly known as a hotel in the community in which it is located". On this issue the court found against the defendants, and properly so, because there was no evidence upon which a contrary finding could be based. But in addition the statute also requires that the accommodation be occupied by persons "who are provided customary hotel services". The court made a finding on this issue adversely to the defendants, which the evidence substantially supports. This is so notwithstanding that there was some proof of certain services provided for the benefit of the tenants.

In the view of the statutory provision as well as the case law, we find no occasion to explore the congressional history in connection with defendants' contention that the Expediter has promulgated regulations which impose a restriction upon the accommodations which Congress intended to exempt. In any event, the law as applied to the facts of this case is too well defined to necessitate any dependence upon the regulations, and on the question of the burden of proof we need only to refer to our holding in Woods v. Oak Park Chateau Corp. et al., supra, 179 F.2d at page 614, which we reaffirm.

█ Prior to the time of the hearing before the Master, the parties in both suits were granted leave to amend their complaints so as to include overcharges demanded and collected by the defendants subsequent to the time of the filing of the original complaints. Defendants contend, without the citation of any authority, that this was an abuse of discretion. They argue that such practice "would mean that there would never be an end to litigation," but it seems to us that such practice would have the opposite effect; that is, it would expedite rather than prolong litigation. In any event, the practice was permissible.

See Rule 15(a) and (d), Fed.Rules Civ. Proc. 28 U.S.C.A.; In re Haskell, 7 Cir., 73 F.2d 879, 880, and Bowles v. Mannie & Co., 7 Cir., 155 F.2d 129.

In the tenants' case the court found, "Defendants have failed to prove that the amount of the overcharges were neither wilful, nor the result of failure to take practicable precaution." The record makes it doubtful if that issue was seriously pressed by the defendants in the District Court. That the finding is adequately supported is hardly open to question. Under such circumstances, it was mandatory upon the court to allow damages in treble the amount of the overcharge. Small v. Schultz, 7 Cir., 173 F.2d 940.

Defendants argue that the allowance of attorney fees in the amount of $1,000.00 is excessive. The Master heard testimony as to the amount of work performed by plaintiffs' attorneys, as well as to the reasonable and customary charge for such services. The allowance by the court was that recommended by the Master. No abuse of discretion is shown and we are not permitted to substitute our judgment for that of the District Court.

The amount allowed by the court as taxable costs for the Master-in-Chancery in the sum of $1,050.00 comes under a different category than the allowance of attorney fees in that the latter was predicated upon a finding that the allowance was a reasonable and customary fee while there is no such showing as to the former. True, the Master in a request for an allowance showed the number of hearings which he had conducted and represented that he had spent in the aggregate "in excess of 42 hours in and about the matters covered by said reference," and that the sum of $1,050.00 would constitute "a fair and reasonable allowance for such services." Predicated upon that representation the court allowed the fee suggested, which amounts to $25.00 per hour, or $200.00 per day, on an 8-hour basis. While we are reluctant to take issue with the District Court on the reasonableness of this allowance, we cannot escape the conclusion that it is grossly excessive, and we so think

notwithstanding that the record discloses performance by the Master in a capable and creditable manner. In our view, the allowance should not exceed the sum of $600.00. More than that, the cases were referred to a Master on motion of the plaintiffs in the tenants' case, which was acquiesced in by the defendants. The tenants have recovered a judgment in treble the amount of the overcharges; in other words, they are to be paid almost $3,000.00 more than they have been overcharged. Under Rule 53(b) F.R.C.P., it is doubtful if the case was properly referred to a Master, but in any event, the plaintiffs in the tenants' suit were the moving party which caused it to be referred and it is they in the main who are to reap the benefit of the Master's work. Under these circumstances, it seems that it would be equitable and just that one-half of the Master's fees be taxed to the plaintiffs in such suit.

The judgments appealed from are, therefore, affirmed in all respects except as to the allowance of fees for the Master-in-Chancery. In that regard, the judgments are reversed, with directions that the Master be allowed as taxable costs the sum of $600.00, one-half taxable against the defendants and the other half taxable against the plaintiffs in the tenants' case.