## GROSS v. UNITED STATES.

### No. 13193.

United States Court of Appeals,
Ninth Circuit.

Jan. 12, 1953.

G. G. Baumen, Los Angeles, Cal., for appellant.

Ed Dupree, Gen. Counsel, Office of Rent Stabilization, A. M. Edwards, Jr., Asst. Gen. Counsel, Nathan Siegel, Solicitor and William A. Moran, Sp. Litigation Atty., ORS, Washington, D.C., for appellee.

Before STEPHENS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment directing appellant to make restitution of rental overcharges pursuant to Section 206(b) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1896(b). The complaint was in one count and prayed for restitution of rental overcharges and injunctive relief pursuant to Section 205(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(a), and for injunction, restitution, and statutory (treble) damages pursuant to Sections 205 and 206 of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, §§ 1895, 1896.

The complaint alleged that at all times *prior* to July 1, 1947, appellant's housing accommodations [1] described in the complaint

1. See Section 202(b) of the Act, 50 U.S. C.A.Appendix, § 1892(b), for definition of "housing accommodations." Reference to the Housing and Rent Act of 1947, as amended, see Section 204(b) (1), indicates that maximum rentals established for "controlled housing accommodations" under the Emergency Price Control Act of 1942, as amended, were carried over and remained in effect in defense-rental areas such as Los Angeles in the instant case. By the aforesaid Act of 1947, a

had been subject to maximum rents authorized under the Price Control Act of 1942, as amended; that at all times *on and after* July 1, 1947, the same accommodations had been subject to maximum rents authorized and in effect pursuant to the said Housing and Rent Act of 1947, as amended, and that at all times mentioned the premises had been within the Los Angeles defense-rental area.

A schedule attached to the complaint (later amended by stipulation) contained the names of the persons using and occupying the accommodations designated and described in the complaint, the period of the occupancy, the rents charged and received by appellant from these persons, the amount of the applicable maximum rent, and also the amount of the overcharges. The parties stipulated and agreed "that assuming that the premises * * * were in fact subject to rent control during the period mentioned in plaintiff's complaint [then] the amended schedule * * * correctly sets forth the names of tenants, the unit occupied by each tenant, the period of overcharges,* the amount of rent paid, the maximum rent that would be applicable and the amount of overcharges to each tenant."

Appellant, by his agreement in the stipulation, did not concede or admit that the premises were at any time subject to rent control or that there was any maximum rent applicable or that there had been any "overcharges" as to any of the tenants named in the amended schedule. In short, his position is that at all times mentioned in the complaint he was operating a motor court which was exempt from rent control under the 1947 Act, as amended.

Issue was joined by appellant's answer in which he generally denied all material allegations of the complaint. By separate defenses he asserted that the complaint failed to set forth facts sufficient to constitute a claim upon which the relief demanded could be granted, and alleged that the premises in question were, at all times from the year 1929 to the date of suit, *a motor court* and

as such not "controlled housing accommodations", under the Act of 1947, as amended.

Appellant demanded a jury trial;[2] this demand was stricken on motion of appellee. Thereafter, the lower court denied a motion of appellant to dismiss the action based on the contention that the complaint did not state a good claim for relief. It also granted the motion of appellee for an order that appellant had the burden of proof of establishing that the premises were a motor court.

The trial court found that the premises here concerned were subject to rent control during the periods involved. It entered judgment for the amount shown by the amended schedule (above referred to) and directed that payment of this amount be made to those shown by the schedule to be entitled to restitution. It denied the prayer for an injunction and refused to award *damages* in any sum. On this appeal the appellee does not assail the judgment but merely seeks affirmance.

In this posture of the case the principal question for decision is noted in appellant's fourth specification of error and is whether under the evidence the trial judge properly and correcty found that appellant's premises were "housing accommodations" subject to the Act of 1947, as amended, and were not a "motor court" exempted from rent control. Applicable law and regulations are now considered, and in this connection we point out that appellant emphasizes the absence of a reference to "transient guests" or "transient occupancy" in the language used in the law or the regulations defining the term "motor court."

Section 202(c) states what accommodations are subject to the Act (of 1947), as follows:

"The term 'controlled housing accommodations' meaning housing accommodations [see note 1] in any defense-rental area, except that it does not include * * *."

"motor court" was exempted from rent control.

* The period here involved was between August, 1947 and October, 1949, inclusive.

2. Appellant's demand for a jury trial reads as follows:

"Defendant, Samuel S. Gross, does hereby respectfully demand a jury trial in the above-entitled action."

Section 202(c) of the Act deals with the motor court exemption. As enacted in 1947 it provided in part:

Section 202(c) (2). "any motor court, or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof; or * *." 50 U.S.C.A.Appendix, § 1892(c) (2); effective July 1, 1947, to April 1, 1948.

This Section was amended in 1948 by Section 201, Public Law 464, 80th Congress to read in part as follows:

Sec. 202 (c) (2). "any motor court, or any part thereof; any trailer or trailer space, or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof; or * * *." 50 U.S.C.A.Appendix, § 1892(c) (2) approved March 30, 1948, effective April 1, 1948.

A further amendment in 1949 appeared in Section 201(b) of Public Law 31, 81st Congress which then in part read:

Sec. 202(c) (2). "any motor court, or any part thereof; any trailer, or trailer space, used exclusively for transient occupancy or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof; or * * *." 50 U.S.C.A.Appendix, § 1892(c) (2); Amendment approved March 30, 1949, effective April 1, 1949.

Pursuant to the Act, Housing and Rent Regulations were issued June 30, 1947, effective July 1, 1947 (12 F.R. 4331) which defined "motor court."[3]

So much for applicable law and regulations.

### Appellant's Specifications of Error

Appellant demands reversal of the judgment on the basis of four alleged errors of the trial court: (1) Refusal to dismiss the complaint on the ground that it did not state a claim upon which relief could be granted, (2) the granting of appellee's motion to strike appellant's demand for a jury trial, (3) granting appellee's motion for an order placing the burden of trial proof on appellant on the issue whether the property involved is a motor court, and (4) in finding that the accommodations involved were not a motel or a motor court under the Housing and Rent Act of 1947, as amended, and determining that such accommodations were controlled housing accommodations under that Act, as amended.

As to his first specification of error appellant argues that since the appellee relied on a purely statutory liability and the statute contains a limitation or exception in the clause creating or defining the liability, such limitation or exception *must be negatived* in the complaint; that the complaint failed to do this hence it did not state a claim upon which relief could be granted. This particular contention was considered and rejected by this court in Bowles v. Wheeler, 9 Cir., 152 F.2d 34, 41, and cases cited therein. See also Martino v. Holzworth, 8 Cir., 158 F.2d 845, 847. It will be noted that in the cases cited in the Wheeler case, the rule applied in our Wheeler case has also been applied in criminal cases.

The complaint in this case contained a short simple statement of the claim showing that appellee was entitled to relief under the Housing and Rent Act, as amended, and it apprised appellant of the character of the claim so that he could adequately answer and prepare for trial. Appellant does not contend that he had any difficulty whatever understanding the nature of the claim against him. Furthermore, his answer denied that the premises were housing accommodations and by separate defenses he alleged that the accommodations were not

3. Counsel for both sides agree that the regulation here applicable remained unchanged during the entire period involved in this litigation. The regulation appears in Housing Rent Regulations, Sec. 825.1 issued June 30, 1947, 12 F.R. 4331. It appears to have been first adopted by the Office of Price Administration on May 31, 1943, as found in 8 F.R. 7334. The regulation reads as follows:

Motor Court "means an establishment renting rooms, cottages, or cabins; supplying parking or storage facilities for motor vehicles in connection with such renting and other services and facilities customarily supplied by such establishments; and commonly known as a motor, auto or tourist court in the community."

controlled housing accommodations because at all times here material they were a motor court. The material issues and the basic contentions of the parties were thus clearly defined and were squarely before the court when the case came to trial. Appellant suffered no prejudice in this regard.

■ Appellant's second claim of error has to do with denial of a jury trial. On this point he argues that before the court could determine whether there was *any basis* for restitution, injunction *or* damages of any type, *it first had to decide* the question of fact as to whether the premises were or were not controlled housing accommodations. Based on this claim appellant urges that on his demand for a jury it was error to refuse to first submit this fact question to a jury.[4] But the court did decide this particular question of fact and made specific findings thereon which set forth that at all times here involved the premises were not a motor court but to the contrary were housing accommodations within the purview of the Housing and Rent Act of 1947, as amended; also that the characteristic of the tenancies was overwhelmingly that of permanent occupancy and not that of transient occupancy. We are unable to say that these findings of fact are clearly erroneous and therefore they are binding on this court and on the parties.

The problem whether the premises were or were not controlled housing accommodations was also *a fact issue common to both the law and equitable claims before the court* and this fact issue can not be arbitrarily cataloged and set to one side as one involving an exclusive common law transaction. But appellant seems to be convinced that the mere presence of this (conceded) fact issue necessarily and automatically made the instant action a case to be tried and disposed of exclusively on the law side of the court. He overlooks the fact that courts must necessarily decide fact issues underlying judgments in equity cases and that judgments for damages are commonplace in equity cases. In the instant case the exclusive relief of restitution here granted was purely equitable in nature and the final judgment was rested upon vital facts carefully found by the court.

■ On argument here appellant urges that in the trial the appellee continued to demand a judgment for damages, but on this appeal it merely urges us to affirm the judgment for restitution. Appellant is therefore not aggrieved on the damage issue since he could not have obtained a more favorable result from a jury on this issue. If there was any error here involved, it was harmless error. All that is now before us is the validity of the judgment for restitution and in the circumstances of this case we conclude that the lower court did not err and that the procedure it adopted did not deprive appellant of any right which the law gave him. In any event determining the order of trial of issues is a function reserved to the trial judge. He did not abuse his discretion in the instant case.

■ Appellant's third specification of error urges that the court erred in holding that the burden of proof was upon him to establish that his accommodations were exempt by the Act. With what seems to be unanimous accord, the courts of appeal have agreed with the holding of the court below.[5] This specification is without merit.

Appellant's fourth specification involves the principal question upon this appeal, i. e., in finding as a fact and holding that appellant's premises were controlled housing accommodations subject to the Act, and not a motor court.

---

4. Appellant's demand for a jury trial was a general demand and not confined to either law or equity issues. See footnote 2. As to the equity issue of restitution which was here decided by the court, a jury verdict thereon would have been merely advisory and not binding on the court. And consult Orenstein v. United States, 1 Cir., 191 F.2d 184; Tanimura v. United States, 9 Cir., 195 F.2d 329.

5. Woods v. Oak Park Chateau, 7 Cir., 179 F.2d 611, 614; Woods v. Pielet, 7 Cir., 187 F.2d 453; Rooks v. Woods, 5 Cir., 189 F.2d 961, 962; Bray v. Peck, 9 Cir., 190 F.2d 998, 1002; Feeley v. Woods, 9 Cir., 190 F.2d 228, 232; Sherman Investment Co. v. United States, 8 Cir., 199 F.2d 504. Cf. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095; Walling v. General Industries Co., 6 Cir., 155 F.2d 711, 713, 714.

■ The ultimate determination of whether the premises were exempt was primarily a question of fact.[6] The court found that at all times here material the premises were in fact controlled housing accommodations and not a motor court, and concluded as a matter of law that the premises were controlled housing accommodations subject to the Act. A consideration of all of the testimony and the numerous exhibits convinces us that the findings on this issue are supported by substantial evidence and we will not disturb the findings since we are not persuaded that they are clearly erroneous. The fourth specification of error is without merit.

The trial judge rendered a memorandum opinion (unreported) which sheds much light on the facts underlying his findings and conclusions on the status of appellant's premises. In this opinion which we summarize and paraphrase, he carefully and comprehensively reviewed and analyzed the evidence in the case and made plain therein the basis for his conclusion that the premises involved were subject to the Act and not decontrolled, and his findings of fact and conclusions of law were consistent with the views expressed in this opinion. We think that it fairly evaluates the probative force and effect of the evidence before him and reflects an effort to be just in his appraisal. We have no quarrel with the so-called "factors" he employed as criteria in his analysis. In our view they were very practical tests to be applied to the facts adduced in the evidence.

The judge discussed the meaning of the undefined term "motor court" and found nothing in the legislative history of the legislation which was helpful in that regard. He concluded that Congress used the term in its generally and commonly accepted meaning; that the use of the word "and" in the definition in the regulation *required a consideration of the common knowledge of the* *community*. (There was direct testimony on this issue of "common knowledge" of the community and obviously this testimony was "considered" by the judge.) His attention was drawn to sections of the California Code, Sections 18,100 and 18,100.5 of the Health and Safety Code, defining "auto court and resort" and "motel" respectively, and he pointed out that both of these State Code sections give emphasis to "transiency" as a factor in the use of the premises they purport to define.

The judge concluded that although *transiency* in connection with a motor court is not a conclusive factor, as in the case of trailer space and tourist homes, it is nonetheless a factor which the court may consider, among others, in determining whether appellant's "Cozy Court" premises is a motel or motor court.

The judge properly concluded that the ultimate question was a factual one as to whether during the time here involved, the "Cozy Court" was a motor court. He referred to some of the factors he considered which included (a) the general operation of the units which seemed to indicate that they were apartments or resident courts rather than motor courts; (b) the fact that no definite parking space was arranged for any tenant and there was no room for a car in front of all of the 134 units except 21 thereof; (c) that the sign on the "Administration Building" did not characterize it as a motor court; that as late as September 14, 1950 appellant was advertising in a newspaper under the category "Furnished Rentals" and not under the category "Hotels" or "Motels"; (d) that on January 14, 1943, appellant filed a petition for consent to bring his housing accommodations under the maximum rent regulations for hotels and rooming houses and the consent was granted on January 22, 1943—that thereafter, on August 2, 1944, the Rent Director proposed to change the category back to the rent regulations for ordinary housing and appellant

6. Woods v. Oak Park Chateau, 7 Cir., 179 F.2d 611 and cases cited; Rooks v. Woods, 5 Cir., 189 F.2d 961, 962; Feeley v. Woods, 9 Cir., 190 F.2d 228, 232; Bray v. Peck, 9 Cir., 190 F.2d 998, 1002. As noted in the Bray case (190 F.2d at page 1002) the burden of proof to show that the premises were actually decontrolled during the period here involved was on appellant and obviously this "burden" imposed the duty of adducing facts which convinced the trier of the facts. This is also our holding in the Feeley case.

protested, and on November 28, 1944, after further investigation, the Rent Director declined to revoke the consent that the premises remain under the hotel and rooming house classification. The registration form statement filed and signed by appellant, on or about December 9, 1942, indicated that appellant filled in the "box", "Tourist Home"—that there was at the time also available on the form the "boxes" "Auto Camp" and "Tourist Cabin." That it thus appears that the character of these premises had not been definitely fixed over a long period of time; (e) that appellant's *first contention* that the property should be classified as a motor court was contained in his application for *decontrol* filed July 17, 1947, a step taken apparently because of the provisions in the 1947 Act, effective July first of that year; (f) that in a list of the "Cozy Court" rules as of July 8, 1946 reference is made to notice of intention to vacate "your apartment," and said rules contain other provisions and regulations which are far more applicable to apartments and bungalow courts than to motor courts or motels; (g) that an exhibit in evidence shows that from August 1, 1947, (the first date here involved) through October, 1949, the period of tenancy of the various tenants indicates that approximately one-half of them were tenants for the full period involved, and another 20% averaged a tenancy of nearly one-half of the period involved. The exhibit demonstrates that, roughly, 70% of the tenancies were "long time" tenancies.

When appraising the evidence and considering the weight to be given to its force and probative value the court had before it appellant's vigorous contention that under the law a motor court is, and must be excluded *without reference to a consideration of transient occupancy*. This theory underlies and gives character to an important aspect of appellant's case. It is obviously stressed because so many of appellant's tenants had occupied his accommodations for the long periods of time indicated in the court's opinion.

Appellant assails the use of transiency as a factor of appraisal because it invited a consideration of the length and character of tenancies of his patrons. He emphasizes

the fact (not noted by the court) that during the war period there was an acute shortage of gasoline and therefore few tourists. As a result the majority of the rentals (based on this sort of "necessity") were on a monthly basis at the end of the war; that this was a "situation" over which appellant had no control. (Appellant's premises were located near large airplane plants, and we may assume that many of his tenants were employed in these plants.)

He follows this with the further argument that had Congress intended that in order for a motor court to be de-controlled it must serve predominately transient occupants, it would have so stated in the Rent Act. He contrasts the provision, Section 202(c) (2), respecting motor courts in the 1947 Act with those applicable to "tourist homes" which must serve transient guests exclusively, and points out that the 1948 amendments *included* any "trailer or trailer space"; that the 1949 amendment added a requirement that trailer or trailer space must be used exclusively for transient occupancy.

No cases are cited to sustain the arguments on transiency of occupancy of motor court facilities, but appellant insists that the language used by Congress should be interpreted by applying to these different types of accommodations the maxim *expressio unius est exclusio alterius*. We cannot follow the argument that because of the express requirement as to transiency for the other two types of accommodations, the lower court should have adopted this maxim and excluded all evidence of the numerous lengthy periods of occupancy and tenancy shown in appellee's evidence. Such a ruling would have improperly barred the showing of these long periods of tenancy—its effect would have been to declare that motor courts were free to adopt and provide permanent or indeterminate tenancy which characterizes apartment occupancy, yet leave motor courts free of the rent control restrictions imposed on apartments which are classified as controlled housing accommodations under the Act of 1947, as amended. We can not conclude that Congress intended such a result from the specific

language dealing with motor courts and we find no merit in the argument.

In showing the length of tenancies of various occupants of appellant's premises, appellee employed a summary of data obtained from and based upon appellant's own rental records. These data covered the period from June, 1947, through October, 1949. Appellant objected to the use of this type of evidence but we see no merit in his objection. This court and many other circuit courts of appeal have frequently approved the use of charts, calculations, tabulations and summaries in both civil and criminal cases where such documents were prepared from original records which were available for inspection and use in cross-examination. In this case appellant's original rental records showing the period and duration of tenancies would have been competent evidence of the matters shown on their face. Cf. United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546. And see Augustine v. Bowles, 9 Cir., 149 F.2d 93, 96; Willapoint Oysters, Inc. v. Ewing, 9 Cir., 174 F.2d 676, 691; United States v. Kelley, 2 Cir., 105 F.2d 912, 918; Gendleman v. United States, 9 Cir., 191 F.2d 993, 996, 997.

The evidence was ample to sustain the findings, conclusions and judgment in this case, and the judgment is affirmed.