**In re RECOMMENDATION OF LOCAL ADVISORY BOARD OF SAN ANTONIO DEFENSE–RENTAL AREA FOR DECONTROL OF BEXAR COUNTY, TEXAS.**

No. 479.

United States Emergency Court of Appeals.

Heard at San Antonio Sept. 16, 1948.

Decided Sept. 22, 1948.

Charles P. Liff, Chief, Appeals Section, Office of the Housing Expediter, of Washington, D. C., for Housing Expediter.

Frank M. Rosson, of San Antonio, Tex., for Local Advisory Board of San Antonio Defense-Rental Area.

General Thos. T. Handy, U. S. Army, Commanding Fourth Army, of Fort Sam Houston, Tex., and Major General James P. Hodges, Jr., U. S. Air Force, Commanding Flying Division, Air Training Command, of San Antonio, Tex., amici curiæ.

Before MARIS, Chief Judge, and MAGRUDER and LINDLEY, Judges.

MAGRUDER, Judge.

This case comes to us under the provisions of Section 204(e) of the Housing and Rent Act of 1947, 61 Stat. 198, as amended by Section 202(d) of the Housing and Rent Act of 1948, Act of March 30, 1948, c. 161, 62 Stat. 95, 50 U.S.C.A.Appendix, § 1894(e). We are called upon to review a recommendation of the Rent Advisory Board for the San Antonio Defense-Rental Area for the decontrol of Bexar County, Texas.

Upon due notice, the Rent Advisory Board held a public hearing in San Antonio on June 8, 9, and 10, 1948, for the purpose of receiving evidence on the following matters: "Removal of any or all maximum rents in Bexar County, Texas, or with respect to any class of housing accommodations in Bexar County, Texas, or any portion thereof, and adjustments (other than individual adjustments) in maximum rents in Bexar County, Texas, or any portion thereof or with respect to any class of housing accommodations within Bexar County, Texas."

On July 6, 1948, upon advance notice to all the members, the board met to take official action on the basis of the evidence so received at the public hearing. Eight members of the eleven-man board were present. The official minutes of the meeting make the following recital: "It was moved by Mr. Thorman and seconded by Mr. Hovestadt that after considering all the evidence, this Rent Advisory Board finds in its judgment that the need for continuing maximum rents for all classes of housing accommodation in all portion of Bexar County, Texas, no longer exists due to sufficient construction of new housing accomodation and that the demand for rental housing accommodation has been otherwise reasonably met and that, therefore, this Rent Advisory Board recommend to the Housing Expediter that all maximum rents for all classes of housing accommodation within all portions of Bexar County, Texas, be removed. An opportunity for discussion was given and after full discussion pro and con the motion was put to a vote and carried with a show of hands, on a vote of four to three with the Chairman stating he would not vote since he was not required to do so. Following this action, Mr. Taylor offered a motion that, 'in case the recommendation for decontrol be disapproved, a 20% raise in the general rent level be made.' This motion was seconded by Mr. Michael. After general discussion this motion was voted down with a show of hands on a five to two vote, it being felt that a 20% increase would be more than was justified in many cases and more than would result in decontrol."

On July 19, 1948, the Housing Expediter received a formal communication from the board stating as follows:

"At a meeting of the Rent Advisory Board, San Antonio Defense Rental Area, held under date of Tuesday, July 6, at 3:00 P.M., at 219 East Arsenal Street, in the City of San Antonio, Texas, a quorum of said Rent Advisory Board, namely eight members thereof, being present, a motion was made, and duly seconded, that the Rent Advisory Board for the San Antonio Defense Rental Area recommend to the Housing Expediter that all maximum rents in Bexar County, a portion of the San Antonio Defense Rental Area, be removed, or that such rents in Bexar County be decontrolled.

"The Rent Advisory Board of the San Antonio Defense Rental Area is composed of eleven members. Each of the eleven members was notified in writing that the meeting would be held on July 6, and the place where it would be held. Of the eleven members, eight were present and took part in the discussions resulting in the resolution to recommend decontrol. The result of the vote on the motion was that four members of the Rent Advisory Board voted to recommend such decontrol, and three voted to continue controls in force, the Chairman of said Board not voting.

"By reason of such action, and by reason of the resolution, a copy of which is hereto attached, you are advised that it is the recommendation of the Rent Advisory Board of the San Antonio Defense Rental Area that Bexar County, Texas, a portion of the San Antonio Defense Rental Area, be entirely decontrolled, or that all maximum rents for said Bexar County be removed, it being the considered opinion of a majority of the Board, duly and properly convened, that 'the demand for rental housing accommodations in Bexar County, Texas, has been reasonably met.' "

Accompanying the foregoing recommendation were a two-page statement in general terms of reasons for the action of the board, the minutes of the board meeting of July 6, 1948, the transcript of the public hearing, the exhibits and other relevant material received in evidence.

After study of the aforesaid record in accordance with his statutory duty, the Housing Expediter on August 13, 1948, dispatched to the board a letter, with accompanying additional statistical material, informing the board that its recommendation for decontrol "must be disapproved". This letter, after stating in some detail the Housing Expediter's reasons for disapproving the recommendation, concluded with the following: "In the light of the foregoing, which are the more important considerations, I am of the opinion that it has not been appropriately substantiated that the demand for rental housing has been reasonably met in Bexar County. The Act, therefore, does not permit me to approve your recommendation. As provided in Section 204(e) of the Act, the record and your recommendation, together with my decision, are being filed with the Emergency Court of Appeals."

On August 23, 1948, the Housing Expediter filed in this court the record of the proceeding. On September 16, 1948, we heard oral argument in the case by counsel for the Housing Expediter and for the board. At this hearing General Thomas T. Handy, commanding the Fourth Army, made an oral statement amicus curiæ opposing decontrol because of an asserted critical housing shortage as affecting military and civilian personnel stationed at Army and Air Force installations in Bexar County.

The Housing Expediter asks us to disapprove the recommendation of decontrol on the merits, on the statutory ground that the evidence in the record "is not of sufficient weight to justify such recommendation". We have not reached this point in our consideration of the case, for we have felt obliged to take note of a defect in the proceeding, which, though not relied upon by the Housing Expediter, is nevertheless of so fundamental a character that it can neither be waived by the Housing Expediter nor overlooked by us. In our view, the recommendation of decontrol cannot be deemed a valid action by the board, because out of a total membership of eleven, eight members being present, only four members voted in favor of the motion to recommend decontrol. We draw this conclusion from a consideration of the statutory scheme as a whole.

■ In the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., Congress clearly expressed its aversion to "unnecessary or unduly prolonged controls over rents", and its purpose "to terminate at the earliest practicable date" all such controls. At the same time, Congress recognized that an emergency still existed, "and that, for the prevention of inflation and for the achievement of a reasonable stability in the general level of rents during the transition period, * * * it is necessary for a limited time to impose certain restrictions upon rents charged for rental housing accommodations in defense-rental areas". It therefore behooves this court, in the performance of its prescribed function, not to adopt lax interpretations of the statutory language which would weaken the safeguards which Congress has established against premature decontrol.

As originally enacted, the act lodged in the Housing Expediter the final power "to remove any or all maximum rents before this title ceases to be in effect, in any defense-rental area, if in his judgment the need for continuing maximum rents in such area no longer exists due to sufficient construction of new housing accommodations

or when the demand for rental housing accommodations has been otherwise reasonably met". To assist him in making these determinations, he was directed to create in each defense-rental area "a local advisory board, each such board to consist of not less than five members who are representative citizens of the area, to be appointed by the Housing Expediter from recommendations made by the respective Governors". These local boards were empowered to make recommendations to the Housing Expediter with reference to decontrol of their area or any portion thereof and with reference to the adequacy of the general rent level in the area. However, their recommendations were advisory merely.

By amendment in the Housing and Rent Act of 1948, the function of these local advisory boards was significantly enhanced. Now they exercise administrative or quasi-legislative power more than merely advisory in character. They are entrusted with primary responsibility for initiating and conducting formal proceedings looking toward general adjustments of maximum rents, or decontrol in whole or in part, within their respective defense-rental areas. Their recommendations along these lines must be approved or disapproved by the Housing Expediter within thirty days. If such a recommendation is "appropriately substantiated and in accordance with applicable law and regulations",—as specifically defined in the act—the Housing Expediter is directed to approve the same and to take prompt action to carry such recommendation into effect. If the Housing Expediter disapproves the recommendation, his action is no longer final. It is provided that if the Housing Expediter "does not approve such recommendation within thirty days after the date of its receipt by him, he shall, within five days after the expiration of such thirty-day period" file the case in the Emergency Court of Appeals. Further, the act provides that if the court "determines that the recommendation is not in accordance with law or that the evidence in the record before the court, including such additional evidence as may be adduced

before the court, is not of sufficient weight to justify such recommendation, the court shall enter an order disapproving such recommendation; otherwise it shall enter an order approving such recommendation". Our action in the matter must be taken "within thirty days" after the case has been filed in this court by the Housing Expediter "(or within such additional period of not more than thirty days as the court may find necessary in exceptional cases)". Finally, any recommendation of a local board as to decontrol or as to a general adjustment of maximum rents within the area, if an order of disapproval thereof has not been entered by the Emergency Court of Appeals within the brief time limit prescribed, "shall be carried out by the Housing Expediter".

In the 1948 amendments Congress also deliberately prescribed more specifically the make-up of these boards in order to insure their representative character. It provided that each such board must "consist of not less than five members who are citizens of the area *and who, insofar as practicable, as a group are representative of the affected interests in the area,* to be appointed by the Housing Expediter, from recommendations made by the respective Governors" (italics added).[1] Congress evidently attached primary importance to the corporate judgment of such local boards so constituted, and regarded them as preeminently fitted to determine, after full public hearing, and in accordance with the statutory standards, whether there should be an adjustment of the level of maximum rents or whether the time had come for decontrol within the area.

In view of the foregoing, there is much to be said for the proposition that to constitute valid board action a recommendation must be concurred in by a majority of the whole membership of the board. It is *not necessary to go that far in this case.* Here eight members of the board were present at the meeting of July 6, 1948, "and took part in the discussions resulting in the resolution to recommend decontrol." When the vote was taken one member, the chair-

---

[1] See Sen.Rep.No.896, 80th Cong., 2d Sess., p. 11 (1948). See also the Statement of the managers on the part of the House in submitting the Conference Report, 94 Cong.Rec. 3552 (March 24, 1948).

man, chose not to vote, though it was his duty to participate in the decisions of the board fully as much as it was the duty of the other members. They had all taken the oath of office to perform the public duties prescribed in the act. The vote for decontrol was four to three, less than a majority of those present having voted in the affirmative. A recommendation so voted obviously lacks the persuasive weight which Congress attached to the collective judgment of a board of local citizens, as a group "representative of the affected interests in the area." If such a recommendation were held to be valid board action, it would presumably be on the ground that, a quorum being present, a board recommendation may be made by a *majority of those voting;* so that if three of the eight members had chosen not to vote, a decontrol recommendation might have been validly carried by a vote of three to two, and those three might have been appointed to the board as representatives of a single interest in the area. The statute cannot reasonably be given any such construction. Bearing in mind the peculiar statutory composition of these rent advisory boards and the special function they were designed to perform, we think it would be quite unwarranted to import by implication into the Housing and Rent Act of 1947, as amended, the voting procedures applicable to city councils and other municipal boards, as derived from the common law of municipal corporations. Cf. Collins v. Janey, 1923, 147 Tenn. 477, 249 S.W. 801.

Under Section 204(d) of the Housing and Rent Act of 1947 the Housing Expediter is authorized "to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions" of Section 204. On June 1, 1948, he issued a "Handbook for Rent Advisory Boards" containing a set of instructions to such boards relating to the performance of their duties. The handbook contains the following significant provision: "In order to make an official recommendation, it is necessary for a quorum of the board to be present. A quorum consists of more than one-half of the total membership of the board. *A decision by a majority of the members present, assuming a quorum is in attendance, constitutes valid action of the board.* If less than all the members of the board are present at the meeting at which the recommendation is voted upon, there must have been advance notice of that meeting or a written waiver of notice by those members not present." (Italics added.) Such a contemporaneous interpretation of the statute, by the official charged with its administration, is entitled to great weight, relating as it does to a matter which certainly is not crystal-clear in the statutory language.[2] The Housing Expediter's instruction to the local boards that a "decision by a majority of the members present, assuming a quorum is in attendance, constitutes valid action of the board" clearly implies that a decision by less than a majority of those present does not constitute valid board action; otherwise the instruction would have read that a "decision by a majority of the members voting, assuming a quorum is in attendance, constitutes valid action of the board." The instruction contained in the Housing Expediter's handbook thus fortifies the conclusion we have independently arrived at upon consideration of the statutory scheme, that in the present case there has been no valid action by the local board recommending decontrol. We have no alternative, therefore, but to disapprove the recommendation as being "not in accordance with law".

The judgments of the Emergency Court of Appeals under this new statute are stated to be "final". We have not yet had occasion to clarify certain points of procedure. In general, we shall have to proceed from case to case, deciding only what needs to be decided. We deem it proper, however, for the future guidance of local advisory boards, to make some comment on the adequacy of the findings made by the local board in the case at bar.

The statute requires the local board to

---

[2] It seems that the Congress specifically contemplated that the Housing Expediter would issue instructions to the local boards prescribing the manner in which they should perform their functions under the act. See Sen.Rep.No.896, 80th Cong., 2d Sess., pp. 4–5 (1948).

transmit to the Housing Expediter not only its recommendation and a transcript of the record, but also "a written statement of its findings made upon the basis of such record". The Housing Expediter is required to determine whether the record so transmitted "contains adequate and substantial evidence to support the findings and recommendation of the local board". If he disapproves a recommendation and files the case in the Emergency Court of Appeals, then "the recommendation, record, and statement of findings of the local board, together with the statement and supporting information filed by the Housing Expediter, shall constitute the record before the court". In view of these statutory provisions, we held in the Matter of Recommendation of Norfolk Local Advisory Board of Hampton Roads Defense-Rental Area, Em.App., 169 F.2d 277, that where a local board failed to make a written statement of its findings, its recommendation must be disapproved by us as being "not in accordance with law".

■ Since findings by the local board have thus been emphasized by Congress as a part of the statutory scheme, it would seem obvious that in the ordinary case more is required than an ultimate finding, in the language of the statute, that "the need for continuing maximum rents in such area * * * no longer exists, due to sufficient construction of new housing accommodations" or because "the demand for rental housing accommodations has been otherwise reasonably met". The findings in the present case amounted to no more than that. With a voluminous record before us, in the very brief time which the statute allows us for consideration of these cases, we cannot perform our reviewing function intelligently without having the benefit of findings by the local board of the main subsidiary facts upon which the ultimate statutory finding and the board's recommendation are based. Otherwise, we must perforce grope somewhat blindly through the record. The particularity of the findings will, of course, depend somewhat upon the nature and complexity of the case. We do not mean to prescribe any rigid requirement as to the form or substance of the findings. But a single illustration will perhaps indicate what we have in mind. The need for continuing rent control may cease to exist "due to sufficient construction of new housing accommodations", using the language of the statute. There are references at various places in the record to new construction in Bexar County. But the board has made no finding as to the extent of the new construction, nor as to the classes of housing accommodations supplied by such new construction. If the new construction is predominantly of more expensive housing units, this would hardly be a substantial alleviation of the housing shortage of less expensive units within the financial range of the great bulk of the population. The fact of such new construction might, therefore, not be sufficient to justify a recommendation for complete decontrol in the area.

Therefore, if the recommendation now before us were otherwise in accordance with law, we might have been inclined to disapprove the recommendation for lack of adequate supporting findings. However, our order herein is based upon the ground set forth in the earlier portion of this opinion.

An order will be entered disapproving the recommendation.