**In re JAMESTOWN DEFENSE RENTAL AREA.**

**No. 489.**

United States Emergency Court of Appeals
Heard at Jamestown, N. Y., Dec. 17, 1948.

Decided Dec. 27, 1948.

Ed Dupree, Gen. Counsel, of Washington, D. C. (Charles P. Liff, Chief, Appeals Section, Office of the Housing Expediter, of Washington, D. C., on the brief), for the Housing Expediter.

Samuel S. Edson, Chairman, of Jamestown, N. Y. (Allison P. Olson, Member, Local Advisory Board, of Jamestown, N. Y., on the brief), for Local Advisory Board for the Jamestown Defense Rental Area.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Acting pursuant to Sec. 204(e) (4) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1894(e) (4), the Local Advisory Board for the Jamestown, New York Defense Rental Area, on October 20, 1948, recommended a 20% increase in the maximum rents for controlled housing accommodations in the area. The Housing Expediter on November 4, 1948, approved an 8% general increase in the maximum rents, and otherwise disapproved the recommendation of the Local Advisory Board, and the record was thereafter filed in this court in accordance with the above-mentioned statute.

It is the contention of the Local Advisory Board that its recommendation was "appropriately substantiated," within the meaning of the statute, and in accordance with applicable law and regulations, and therefore, in conformity with the provisions of the Rent Act, should be approved. It is the claim of the Housing Expediter that the recommendation of the local board for a 20% increase in maximum rents was substantiated only to the extent of an 8% rental increase, and that the remainder of the recommendation should be disapproved.

A brief statement of the circumstances leading to the recommendation of the Local Advisory Board may serve to clarify the issue. By resolution adopted May 6, 1948, the Board determined upon a survey as to the adequacy of the general rent level in the area, and requested the Area Rent Director to mail out to the landlords in the area, an appropriate number of forms designated "Form D–600, Landlord's Statement of Comparative Operating Position," and "Form D–601, Statement of Property Taxes," together with letters of instruction prepared by the board. Approximately 4,-500 of such letters and forms were sent out. Of these about two hundred were returned by the postal authorities as undeliverable, since the individual addressed was either dead or no longer at the address given. More than 150 replied stating they no longer rented their properties, or had disposed of them. Many others indicated they had not sufficient records to enable them to fill out the forms. Of the reports received by the local board, 159 were rejected as being incomplete or indecipherable. Completed Forms D–600 were received by the board for 494 rental units. Analysis of the completed forms showed a ratio of decrease in the aggregate net operating income of the rental units reported upon, for the current year below that of the base year, amounting to 19.62% of the gross rents for 1948.

After the receipt of these reports, and in compliance with Sec. 204(e) (4) of the Housing and Rent Act, the board decided to hold a public hearing at the County Court House at Mayville, New York, on October 2, 1948, to hear evidence of the adequacy of the general rent level of the area, as well as evidence of the increase of real property taxes and operating expenses relating to rental housing between December 31, 1942, and June 1, 1948. All of the requirements of the statute relating to the giving of notice, holding and recording of the proposed hearing were complied with. Moreover, notices of the meeting were sent to the mayors of all cities and villages in the area—seventeen in number—the Chairman of the Board of Supervisors of the County in which the Defense Rental Area was located, all Chambers of Commerce, all war veterans organizations—26 in number—and to the five principal labor organizations in the area. Fifty-five persons were present at the hearing. Only two tenants appeared, and neither of them made any objection to the proposal of an increase of maximum rentals. A number of persons appeared before the board giving testimony of the increase over the base period of 1942 in operating and maintenance costs, relating to rental housing, and recitals were made to the board of the increase in costs of water service, painting, carpenter work, plumbing, and fuel expenses; and it appeared from such evidence that necessary repairs to rental units were not being carried out because of such increased costs, and the low rentals being received. The only opposition to any proposed increase of rentals came from one of the labor organizations to which a notice of the meeting had been sent. This objection took the form of a letter addressed to the board, stating that the organization was opposed to a blanket or general increase in rent for the area, but offering no statistical support or other evidence for such position.

After consideration of the evidence before it, including the information contained on the Forms D–600, Landlord's Statement of Comparative Operating Position, and the Forms D–601, Statement of Property Taxes, the Local Advisory Board made a unanimous recommendation of a general increase in the maximum rent in the area of 20%. Of the amount, an 8% increase was recommended because of an increase in taxes in the current year over the base year. The remaining increase of 12% was recommended because of a decrease in net operating income in the current year, below

the base year, in excess of the decrease therein resulting from the increased taxes. As has been mentioned, the Housing Expediter approved the 8% rental increase because of increase in taxes over those of the base year. The single question before us is with respect to the additional increase of 12%, recommended on the ground of a decrease in net operating income below the base year; and the issue is whether, within the intendment of the Housing and Rent Act, this recommendation by the Local Advisory Board of a 12% rental increase is "appropriately substantiated."

In arriving at its conclusions and recommendation, the Local Advisory Board relied upon the data contained in the Form D-600 reports for 494 rental units, which had been sent out by the Area Rent Director. These forms had been sent out by the Area Rent Director to the landlords in the area and the information upon which the board relied in making its recommendations had been furnished by the landlords of the units in question over their certificates of correctness and truthfulness. The Form D-600 report provided spaces for the name and address of the landlord, the number of dwelling units reported upon, the rental income, operating expenses, net operating income, and items of expense, all for the base year and the current year. The operating expenses above mentioned were further required to be broken down into the following separate items: (a) repair and maintenance, (b) actual taxes, (c) utilities, (d) heating fuel, (e) employee wages, (f) management fees, (g) miscellaneous—all of the foregoing items being required to be set forth both for the base year and the current year.

On the reverse side of the Form D-600 are set forth definitions and instructions. One of these requires that items of repair and maintenance which recur at intervals of more than one year must be allocated over a period of years equivalent to their normal recurrence. It is also required that if the landlord's expenditure for repair and maintenance, management fees, or miscellaneous items "in the current year exceed the expenditures in the base year by more than 25 percent, a full explanation must be given." If the listed items of in-

come and expense on the reports for the 494 rental units be alone considered, it is clear that, aside from taxes, the aggregate net operating income for these units is 12% less than during the base year. Since it is here conceded that 494 rental units would constitute a fair and representative sample of all the units in the area, it is contended by the Local Advisory Board that their recommendation of a 12 percent increase for this item is appropriately substantiated by the evidence.

To this claim, the Housing Expediter replies that of the reports for 494 units, those for 200 units must be rejected for the reason that they are deficient and incomplete and do not afford any basis to support the recommendation of the local board. With respect to the remainder of 294 units reported upon, the Housing Expediter submits that this number does not constitute a "representative sample" upon which to base a conclusion with regard to decreased operating income.

Under Section 204(d) of the Housing and Rent Act of 1947, the Housing Expediter is authorized "to issue such regulations and orders, consistent with the provisions of this title, as he may deem necessary to carry out the provisions" of Section 204. In the Matter of Recommendation of the Local Advisory Board of the San Antonio Defense-Rental Area for the Decontrol of Bexar County, Texas, 169 F.2d 955, we pointed out that Congress specifically contemplated that the Housing Expediter should issue instructions to the local boards prescribing the manner in which they should perform their functions under the act. This, he did, on June 1, 1948, by issuing a "Handbook for Rent Advisory Boards" containing a set of instructions to such boards relating to the performance of their duties.

In the handbook it is provided:

A recommendation for a general adjustment in rents in the area or portion thereof, or for a class of housing accommodations must be substantiated by one or more of the following:

1. Evidence comparing the current year operating position of properties in the area or class affected by the recommendation,

with their operating position on the maximum rent date.

\* \* \* \* \* \*

To substantiate a recommendation based on the comparative operating position of residental rental properties, the board must submit evidence that the net operating income of rental properties generally in the area or class affected by the recommendation is lower in the *current year* than it was in the *base year*. Net operating income is the difference between *rental income and operating expenses*.

The board must secure income and expense data for a *representative sample* of residential rental properties, and must process and submit the data in the following manner: \* \* \*

The handbook then sets forth methods of ascertaining net operating income, and other items, and proceeds to define a representative sample as follows: *"Representative sample* means a group of entirely residential properties which \* \* \* are selected from among the principal cities and towns in the area affected by the recommendation \* \* \* and which \* \* \* includes at least the following number of rental dwelling units: \* \* \*." The definition then states that "where the number of rental units in the area and classes affected, as estimated by Area Rent Director" is a certain amount, the "minimum number of rental dwelling units in sample must be" a stated number. Where the number of such rental units in the area affected is between 15,001 and 20,000, the minimum number of rental units in the sample is required to be 450. The record shows that there are approximately 19,000 defense rental units in the Jamestown Defense Rental Area.

■ We are confronted at the outset by the question whether the regulation thus set forth in the handbook that a representative sample in this case must include at least 450 units is valid and reasonable. It is obvious that in order to be sufficiently representative to have probative value a sample must include enough examples of the whole to minimize the danger that individual aberrations will distort the result which the sample discloses. Accordingly, a mini-

mum must be established, and we are of the opinion that the Housing Expediter's requirement that the sample must comprise approximately 3% of the whole is not unreasonable. It follows that the requirement is valid and binding upon the local board.

We come then to the question whether the reports which the Housing Expediter rejected covering 200 units were properly rejected as deficient and incomplete. Most of them were rejected for the reason that they did not contain an explanation for the increase in the items of expense of repair and maintenance in the current year over the base year. It is true that the instruction on the reverse of the form stated that if such expenditures in the current year exceeded the expenditures in the base year by more than 25%, "a full explanation must be given." This requirement, however, was not an embodiment of any regulation or provision in the handbook provided by the Expediter, for no such regulation appeared therein, or was otherwise promulgated. The Form D–600 was supplied by the Housing Expediter for the convenience of the local board, but it is conceded by the Expediter that the board was not obliged, under the provisions of the handbook, to utilize this particular form in eliciting the information required to substantiate its recommendation.

Moreover, while such a requirement of "a full explanation" in the given circumstances could possibly have been made a part of the regulations prescribed by the Housing Expediter, it might well be doubted whether a direction so vague and ambiguous would have been of any real help. For it now appears that what the Housing Expediter had in mind to obtain by this request for explanation was detailed information as to the 1948 expenditures from which he could determine whether any of them were of such a nature that they should be allocated over a period of years instead of being charged in full to the year of payment. He, therefore, rejected many of the reports in which an answer was given to this request for explanation which, although the answer could fairly be construed as responsive to the language of the form, did not give him the information

which he now states that he wanted. Thus, many of those who attempted to comply with the direction, but whose reports he rejected, stated that the reason for the increase of their expenditures in the current year over those in the base year was because of the great increase in the cost of labor and materials in the intervening period.

■ We are of the opinion that the failure to make the explanation in compliance with the. directions on the reverse of the form did not affect the admissibility of the reports contained in the Forms D–600 in question. Even without the explanation of the increase of expenses in the current year over the base year, the reports were still of certain evidential value. The lack of explanation might be said to affect the credibility of the party making the report. The weight of this evidence, however, was for the Local Advisory Board, as well as for the Housing Expediter, and for this court on review, in arriving at the conclusion as to whether the recommendation of the local board was "appropriately substantiated." In the light of the foregoing, we have examined and considered the landlords' statements, including those approved as well as those rejected by the Housing Expediter, and find a sufficient number admissible to constitute a "representative sample," within the requirement of the handbook, for the purpose of considering whether there was a decrease of net operating income in the current year, below that of the base year.

■ The local board had before it witnesses who furnished evidence of the great increase in operating and maintenance costs relating to rental housing, over the base period; and it is significant that no evidence to the contrary was offered despite the wide publicity given to the public hearing. The board had before it the reports of operating income from landlords of a representative sample of rental units in the area. In some cases the operating income was greater than during the base period. In many more cases it was less. It can reasonably be said that the sum of the evidence set forth in the Form D–600 reports was corroborated by the testimony given in the public hearing.

From the foregoing, it is our conclusion that the Local Advisory Board had before it evidence from which it could properly arrive at a recommendation of an increase of maximum rents of 20% because of decrease of net operating income below that of the base period. The board was composed of disinterested and outstanding citizens serving under appointment by the Housing Expediter. The recommendation was made by unanimous action of the entire board. In this case the only function of this court is to decide whether the recommendation of the Local Advisory Board was appropriately substantiated by the evidence. We find that the recommendation was so substantiated.

■ We think that the recommendation of the board should be applicable to the maximum rents established on the basis of the rent level of March 1, 1942. All rent adjustments made subsequent to the said date under the provisions of existing or prior law are to be considered as included and absorbed by the recommended increase, except where the adjustments were made for major capital improvements, increase or decrease of space, services and equipment, subletting and increase or decrease of occupancy, and because of blood, personal or other special relationship between owner and occupant.

In accordance with the provisions of the Housing and Rent Act, an order will be entered approving the recommendation of the Local Advisory Board as hereinabove indicated.