180 F.2d 359
 WATKINS et al.
v.
WOODS, Housing Expediter.
APARTMENT BLDG. OWNERS & MANAGERS ASS'N OF CHICAGO
v.
WOODS, Housing Expediter.
 No. 526.
 No. 527.
 United States Emergency Court of Appeals.
 Heard at Chicago February 24, 1950.
 Decided February 28, 1950.
 
 COPYRIGHT MATERIAL OMITTED Robert S. Cushman, Chicago, Ill., with whom David P. List, Chicago, Ill., was on the brief, for complainants W. A. P. Watkins and others.
 Charles R. Sprowl, Chicago, Ill., for complainants Apartment Bldg. Owners & Managers Ass'n of Chicago.
 Charles P. Liff, Chief, Appeals Section, Washington, D. C., with whom Ed Dupree, General Counsel, Office of the Housing Expediter, Washington, D. C., was on the brief, for respondent.
 Alex Elson, Chicago, Ill., for Independent Voters of Illinois, amicus curiæ.
 Before MAGRUDER, McALLISTER and LINDLEY, Judges.
 LINDLEY, Judge.
 
 
 1
 In May, 1949, the Cook County Rent Advisory Board of the Chicago Defense-Rental Area, acting under Section 204(e) of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, § 1894(e), gave notice of a public hearing for the announced purpose of enabling the Board to take evidence on the following: "The adequacy of the general rent level of residential rental properties in Cook County, Illinois, and the net operating income of residential rental income generally in Cook County, Illinois, in the calendar year 1948, as compared with the calendar year 1942." The purpose of the hearing thus stated served to define the issue to be determined by the Board and bears also upon the scope of the issue now before us on judicial review of the Board's action.
 
 
 2
 In defining the purpose of the hearing, as above stated, the Board was proceeding according to instructions from the Housing Expediter contained in his "Handbook for Rent Advisory Boards" issued June, 1948.[1] As we pointed out in Re Recommendation of Local Advisory Board of San Antonio Defense-Rental Area, 1948, 169 F.2d 955, 959, and again in Re Jamestown Defense-Rental Area, 171 F.2d 708, 710, the Act authorized the Housing Expediter to issue regulations deemed by him necessary to carry out the provisions of Section 204, and the legislative history indicates that Congress specifically contemplated that the Housing Expediter should issue instructions to local boards prescribing the manner in which they should perform their functions under the Act.
 
 
 3
 The Handbook provided that a recommendation by an advisory board for a general adjustment in rents "must be substantiated by one or more of the following:
 
 
 4
 "1. Evidence comparing the current year operating position of property in the area or class affected by the recommendation with the operating position on the maximum rent date.
 
 
 5
 "2. Evidence of general increase in taxes on rental property in the area or class affected by recommendation, since the maximum rent date.
 
 
 6
 "3. Evidence that the rent level on the maximum rent date was abnormally low."
 
 
 7
 From the announced purpose of the public hearing, it is apparent that the Board limited its inquiry to a determination of whether a recommendation for a general adjustment in rents was warranted on the first of the above three possible bases. The Handbook outlined "the specific evidence required" to substantiate a recommendation under each of the three headings. Where the recommendation is based on the comparative operating position, the Handbook provided that the Board "must submit evidence that the net operating income of rental properties generally in the area or class affected by the recommendation is lower in the current year than it was in the base year", and it was further provided that the Board "must secure income and expense data for a representative sample of residential rental properties." The term "representative sample" was defined. Where, as in the present case, the number of rental units in the area affected exceeded 500,000, it was prescribed that the maximum number of rental dwelling units in the sample must be 5,000. Moreover, and this we shall enlarge upon somewhat later, the Handbook provided that the individual properties included in the sample should be selected objectively, and that to secure a statistically accurate sample, data should be obtained for all of the properties in the sample originally selected.
 
 
 8
 From the foregoing, it is apparent that unless the record contains evidence showing the comparative operating position of rental properties in the two years, in compliance with the requirements of the Handbook, a recommendation for a general increase in rentals on that basis can not be deemed to be properly substantiated. The fact that the record might contain other evidence, of a circumstantial character, from which the inference might be drawn that the operating position of landlords generally had deteriorated, would not, of itself, be a sufficient basis for a recommended general increase of rents. The Housing Expediter has authority, within reasonable limits, to prescribe the type of proof necessary to support an affirmative recommendation; and in the Jamestown case, supra, 171 F.2d 708, 711, we gave general approval to the requirements of the Handbook in this particular as being "valid and reasonable."
 
 
 9
 On June 28, 1949, the Board, after deliberation upon the evidence introduced at the public hearing, voted its recommendation "that there be no general adjustment of the maximum rentals in Cook County, Illinois, at this time". As the sole factual basis for its recommendation, the Board found "the general level of residential rental properties in Cook County, Illinois, and the net operating income of residential properties generally in Cook County, Illinois, in the calendar year 1948 as compared with the calendar year 1942, to be adequate and that there is no need for any general adjustment of the maximum rents in that area." The Housing Expediter approved the recommendation, and the case came before us for review upon complaints filed by representative groups of landlords, as authorized by Section 204(e) of the Act. Construing the Board's sole finding to mean that the net operating income of landlords for the year 1948 was at least equal to that enjoyed by them in the year 1942, we concluded, from our examination of the record, that it did not contain adequate and substantial evidence to support that finding. We, therefore, were constrained to disapprove the negative recommendation of the Board; and we remanded the matter to the Board "to reconsider the evidence now in the record, together with such additional evidence as it may deem it appropriate to receive at a further hearing, if in its discretion it should decide to hold one within the next thirty days, and to make such findings of fact relating to the matter of an increase in maximum rents as the relevant and credible evidence, or lack of it, may justify, and thereupon to make an appropriate recommendation with respect thereto, in lieu of the recommendation which we have today disapproved." Watkins et al. v. Woods, 1949, 177 F.2d 516, 520.
 
 
 10
 On November 10, 1949, the Cook County Rent Advisory Board held a special meeting pursuant to the directions contained in the opinion of this court. After a general discussion of the import of the decision, a motion that the Board proceed to make findings of facts was presented and carried. Thereupon the secretary read three pertinent communications. The first, from member Ducey, who was not present at the meeting, proposed certain findings of fact. The second, from the Office of the Housing Expediter, was an interpretation of this court's decision of November 1, 1949, by the Expediter in response to a request submitted by one of the members of the Board. The third, from the attorneys for complainants, copies of which were distributed to the members, set forth proposed findings which would, if adopted, have necessarily resulted in a recommendation for a substantial general rent increase. After these communications had been read, Board Member Mann, having reviewed briefly the evidence on which he relied, moved adoption of findings which, in turn, were such as to necessitate a recommendation that there be no general increase. After lengthy consideration, during the course of which the Board rejected a suggestion that all proposed findings be pooled and further action thereon deferred until the members could study them, Mr. Mann's motion was carried by an 8-6 vote. Member Myer's motion that the Board recommend that there be no general rent increase was promptly carried by the same vote.
 
 
 11
 The "Findings and Recommendation of the Cook County Rent Advisory Board," copies of which were dispatched to the Housing Expediter on November 22, 1949, read, in essential part, as follows:
 
 
 12
 "* * * after considering the evidence and exhibits introduced and statements and brief submitted by interested parties and groups, and after reading and considering the decision of the United States Emergency Court of Appeals * * and after a full and complete discussion of same the Cook County Rent Advisory Board finds:
 
 
 13
 "1. The landlords have failed to prove that there should be a general rent increase in Cook County.
 
 
 14
 "2. None of the surveys introduced in evidence is reliable because they are not based upon representative samples.
 
 
 15
 "3. The landlords have not proved that a general rent increase in Cook County is necessary in order to remove hardships or correct inequities. On the contrary the record shows that existing inequities would be perpetuated and increased by a general rent increase.
 
 
 16
 "4. Any existing individual hardships can be corrected by proper administrative action on individual landlord petitions.
 
 
 17
 "Therefore, on the basis of these findings adopted by the board, the board recommends to the Housing Expediter that there be no general rent increase in residential properties in Cook County at the present time * * *."
 
 
 18
 The Expediter approved the Board's recommendation by letter of December 9, 1949, saying: "I have, in the light of the entire record, carefully examined and considered the findings of fact made by your Board and must conclude that the recommendation is supported by adequate and substantial evidence. Independent examination of the record leads me to the same conclusion. For these reasons, among others, I find that under the standards of the Act and the Handbook, the recommendation of your Board should be approved." The Expediter's approval was followed by the complaints in this court.
 
 
 19
 Complainants contend that the recommendation and the Expediter's approval "are not in accordance with applicable law because the evidence * * * clearly establishes that the Board should have recommended and the respondent Housing Expediter should have approved a substantial general rent increase * * *." In support of their contention that the court should disapprove the recommendation, complainants aver that the findings adopted by the Board are not supported by adequate and substantial evidence and that the Board, in its procedure, did not comply with the intent of this court's decision of November 1, 1949. They ask us to disapprove the recommendation and remand the cause to the Board with directions to adopt the findings tendered by complainants and to recommend a general rent increase in the amount requested or, in the alternative, to remand to the Expediter with a direction that he exercise, in favor of complainants, his statutory power to make such general rent increases as are necessary to remove hardships and correct inequities.
 
 
 20
 Respondent maintains that the Board, in making its recommendation, complied fully with the statutory requirements and the suggestions contained in our opinion of November 1. He urges, further, that the findings adopted by the Board are supported by sufficient and substantial evidence, and that the recommendation is amply supported by the findings. Consequently, respondent insists that his approval of the recommendation was proper — indeed, mandatory — and that this court should also approve the recommendation, which, he insists, is "appropriately substantiated and in accordance with applicable law and regulations", as required by Section 204(e) (4) of the Act. Finally, respondent asserts that this court has no authority to direct either the Board or the Expediter to grant the general increase to which complainants insist they are entitled.
 
 
 21
 In our earlier opinion, we reiterated our firm conviction that we are not authorized to substitute our judgment for that of the local board and concluded that, even though we disapproved the negative recommendation approved by the Expediter, we could not grant complainants the general increase they were seeking. Complainants now request the court, in the event it disapproves the reiterated negative recommendation now under consideration, to direct the Board to recommend, or the Expediter to grant, the general increase which, they contend, the relevant, undisputed evidence requires, — this on the theory that, although the court cannot substitute its judgment for that of the Board or respondent, it does have the power, where the evidence is such that there is but one possible conclusion to be drawn therefrom, to compel the Board to make the recommendation indicated by the evidence and to compel respondent to approve that recommendation.
 
 
 22
 Complainants argue that, though the trial judge in an ordinary action at law before a jury, has no right to substitute his own view of the facts for that of the jury, he has the duty, in a case where the undisputed, relevant evidence establishes plaintiff's case or defendant's defense, to direct a verdict or enter judgment notwithstanding the verdict. From this they conclude that this court, though it may not grant a general increase, may direct the Board or the Expediter to grant such an increase where the evidence requires it To state the analogy, we think, is to disclose its fallacy, for this proceeding is not at all comparable to an ordinary action at law before a jury, nor does this court, which is not a court of general jurisdiction but one of limited statutory jurisdiction, In re Recommendation of Local Advisory Board, 170 F.2d 556, In re Recommendation of Local Advisory Board, 172 F. 2d 726, 729, Watkins et al. v. Woods, 177 F.2d 516, possess the functions of a trial court having general jurisdiction in law or equity. We said in the first opinion in this case, "we have no power except as granted by Congress," and that legislative body has not conferred upon us authority to order a local board to recommend a general increase or to require the Expediter to grant it, but has lodged in us only the power to approve or disapprove such recommendations and decisions as have been freely made by the local boards and by respondent. Consequently, the relief prayed is not within this court's authority to grant.
 
 
 23
 Complainants' contention that the recommendation must be disapproved because the Board did not proceed in accord with this court's instructions rests on their assertion that the Board did not, as directed by the court, reconsider the evidence, make findings of fact, and then make a recommendation based on those findings, but, instead, first determined to adhere to its former recommendation and then adopted findings to support that recommendation. It would seem clear that the procedure outlined in that portion of our opinion remanding the case was not mandatory but merely suggestive; we announced what in our opinion, would constitute an "orderly procedure," but we certainly did not mean that we would disapprove an otherwise valid recommendation soley because that procedure had not been followed.[2]
 
 
 24
 Nor is it clear that the Board failed to follow the suggested procedure, for the record indicates that, after the adoption of a motion to proceed to make findings of fact, two sets of findings were presented to the Board which, after a lengthy discussion, in which it was pointed out that adoption of one set would lead to a recommendation for a rent increase while adoption of the other would amount to a reaffirmation of the Board's original recommendation, adopted the latter set and then voted to recommend that there be no general increase. However, irrespective of whether the court's directions, if, arguendo, we so interpret the language of our opinion, were observed by the Board, it seems clear that our essential question is: Does the evidence of record support the findings of fact upon which the Board's recommendation is based? If the answer to this question be in the affirmative, the requirements of the statute have been satisfied, Section 204(e) (4), Housing and Rent Act of 1947, as amended. The Act says that if we determine that the recommendation is not in accordance with law, or that the evidence in the record "is not of sufficient weight to justify such recommendation", the court shall enter an order disapproving such recommendation; otherwise we shall approve the same. Such was the language of the Act as amended in 1948, under which it was obviously contemplated that this court would review only affirmative recommendations, for decontrol of the area, or for a general adjustment of maximum rent levels. But this language has been retained in the Act, notwithstanding that under the 1949 amendments we may have occasion, as in the present case, to review a negative recommendation at the instance of an aggrieved representative group of landlords. However, a negative recommendation may properly be supported by a negative finding, to the effect that the record is lacking in evidence sufficient to warrant a recommendation of a general increase. Our inquiry in such a case, then, is whether it was rational for the Board to conclude, from the evidence in the record, or the lack of it, that the necessity for a general rent increase had not been established.
 
 
 25
 We turn to the ultimate question. Complainants attack the Board's first finding ("The landlords have failed to prove that there should be a general rent increase in Cook County.") as contrary to the undisputed evidence that landlords' operating expenses have increased substantially in the period between 1942 and 1948. Respondent does not deny that increases in costs have occurred, but he insists that they, by themselves alone, cannot be made the basis of an "appropriately substantiated" recommendation for a general rent increase. It seems obvious that respondent's position is correct, for, under the standards set up by the Expediter for the guidance of local advisory boards, 1948 Handbook for Rent Advisory Boards, evidence of increased operating costs, standing alone, is not enough to substantiate a recommendation for a general increase. Since complainants have not attacked the validity of this section, which is, in effect, an administrative regulation binding upon the local boards, United Labor Committee v. Woods, Em.App., 175 F.2d 967, 969, they cannot now be heard to urge that evidence less than that prescribed therein should have been regarded as sufficient proof of the necessity for a general increase. However, it does not follow that the Board's first finding is valid, for its conclusion that the landlords have failed to prove that there should be a general increase is, it seems to us, ultimately dependent on the validity of its finding that "None of the surveys introduced in evidence is reliable because they are not based upon representative samples," for, if the surveys are reliable, the results tend to show that a part of the landlords, at least, are entitled to a rent adjustment.
 
 
 26
 The Handbook provides that a recommended rent increase, whether based on increased taxes or comparative operating position, must be substantiated by evidence secured from a representative sample of residential rental properties in the area or class affected by the recommendation. Part IV B, Sections 1 and 2, 1948, Handbook for Rent Advisory Boards. The Board found that the surveys before it were not reliable because, as it said, they were not based on representative samples, a finding which this court is bound to accept if supported by "adequate and substantial" evidence. Housing and Rent Act of 1947, as amended, Section 204(e) (4) (E). Complainants insist that the Board's finding is, in the case of the OPA survey, not supported by any evidence, and that the findings as to the D-600 survey and that conducted by the Cook County Fair Rent Committee, are supported only by the testimony of Dr. Hauser, which, complainants contend, cannot be regarded as "adequate and substantial" evidence. With respect to the OPA survey, whether it is or is not reliable would seem to be wholly immaterial, for it contained no data for the year 1948 (the "current year," for the purposes of the surveys) and, hence, is not "evidence comparing the current year operating position of properties * * * with their operating position on the maximum rent date," as required by the Handbook.
 
 
 27
 It has been indicated that the Handbook makes the validity of the results of the Board's D-600 survey and the Cook County Fair Rent Committee's survey dependent upon the representative character of the samples on which they were based. Upon this question, Professor Hauser, an experienced statistician, who is, at present, Acting Director of the Census Bureau, testified that neither of the surveys in question was based on a "representative sample," as that term is defined in Part IV B, Section 4(h) of the Handbook, a fact which is verified by a cursory examination of the manner in which the surveys were conducted, and, further, that both surveys were statistically biased and that any quality of representativeness the original samples may have had was destroyed by the self-selection which resulted from the fact that only those persons who chose to do so filled out and mailed in the forms from which the data were taken.
 
 
 28
 Dr. Hauser specifically pointed out that, with respect to the "Survey of Comparative Operating Position" conducted under the auspices of the Cook County Rent Advisory Board, there was no random selection of property owners; that out of approximately 44,000 owners selected for the sample, only 1,805 responded to the questionnaire, and that of these, only 1,110 could be used for the analysis. Further, he testified with respect to the survey conducted by the Cook County Fair Rent Committee, through the Real Estate Research Corporation, that, in the first place, it was conducted under the auspices of an interested party, namely, a group of property owners; that the objectivity of the survey was questionable, because in the letter addressed to the owners, reference was made to the need for data so that a case could be made in behalf of the property owners; that apparently no effort was made to obtain a representative sample, as evidenced by the fact that out of 59,000 questionnaires sent out, 12,000 were made available to the members of the Cook County Fair Rent Committee, 8,000 were distributed at meetings of property owners, 22,000 sent out to mailing lists of property owners, and 17,000 distributed through the janitors' union; that of these 59,000 owners, only 1,321 returned the questionnaires, and of these 597 returned defective schedules, leaving only 724 owners out of 59,000 whose returns were capable of analysis; and that the foregoing amounted to self-selection, rather than a selection at random, and probably resulted for the most part in responses by those who were most interested in securing rental increases. In addition, Dr. Hauser emphasized that the surveys, in failing to adopt techniques to provide assurance that a representative sample would be obtained, violated the instructions contained in the Handbook for Rent Advisory Boards issued by the Office of the Housing Expediter, June, 1948, which, in outlining the types of evidence needed to substantiate a recommendation for general adjustment in rents, provided that, in respect to substantiating a recommendation based on the comparative operating position of residential rental properties: "The Board must secure income and expense data for a representative sample of residential properties * * *."
 
 
 29
 The definition of "representative sample" in the Handbook includes the following: "The individual properties included in the sample should be selected objectively; that is, the extent of expected changes in net operating income or taxes should not be allowed to affect whether or not a particular property is included in the sample. Moreover, to secure a statistically accurate sample, data should be obtained for all of the properties in the sample originally selected; data for other properties should be substituted only when data for the originally selected properties cannot be obtained."
 
 
 30
 Dr. Hauser concluded by stating that a statistical survey could be obtained that would provide valid information on the comparative operating position of the properties in question, but that the sampling methods which had been used were so defective that the findings sought to be proved were invalidated, and that it would be entirely erroneous to base any determination on the findings in those surveys.
 
 
 31
 Complainants seek to avoid the effect of this testimony by asserting that Dr. Hauser was ignorant of the controlling facts, but a careful reading of his testimony before the Board indicates otherwise. It is true that he was unaware of the OPA survey, but it is difficult to understand how this detracts from his testimony with respect to the surveys of the Board and the Cook County Fair Rent Committee. Nor is there any merit in complainants' contention that, because he testified voluntarily rather than on behalf of a tenant or landlord group, the Board should have disregarded his testimony, all of which, it seems to us, clearly constitutes adequate and substantial evidence necessary to support the Board's finding that the surveys are not reliable because not representative.
 
 
 32
 The Board's third finding of fact is as follows: "3. The landlords have not proved that a general rent increase in Cook County is necessary in order to remove hardships or correct inequities. On the contrary the record shows that existing inequities would be perpetuated and increased by a general rent increase."
 
 
 33
 Since the first sentence of this finding is, like Finding No. 1, no more than a conclusion based on the second finding, approval of the latter carries with it approval of the former. As to the remainder of the finding, its validity, we think, is borne out by the fact that both surveys tended to show that, in the years between 1942 and 1948, the net operating position of a considerable percentage of the landlords participating in the surveys had, in fact, improved while that of others had deteriorated. To give all landlords the same percentum increase would certainly accentuate and tend to perpetuate existing differences, for the result would be to improve further the lot of the landlord whose net operating income is greater today than in 1942 while bringing a proportionally smaller benefit to the landlord whose net operating income is now less than it was in 1942 and a still smaller benefit to the landlord who is currently operating at a loss. This situation, in conjunction with the testimony of numerous tenants' witnesses, who maintained that existing hardships and inequities could best be corrected by individual landlord petitions, might well have led the Board to conclude that a general rent increase would have the effect of increasing and perpetuating the hardships and inequities which admittedly exist and, further, to conclude that "Any existing individual hardships can be corrected by proper administrative action on individual landlord petitions," as stated in its fourth finding.
 
 
 34
 Complainants insist that neither the third nor fourth finding has any legal or factual basis. They maintain that the third is an erroneous legal conclusion and that the fourth is contrary to undisputed evidence that, (1), a large percentage of landlords do not have the records of income and expenses which are necessary to enable them to apply for individual rent adjustments and, consequently, cannot obtain relief, except through a general rent increase, and, (2), that it would be physically impossible for the Chicago area rent office to process, except over a period of several years, the number of individual applications which would be forthcoming, if no general rent increase is granted landlords in the Chicago area. Both of these contentions are, of course, highly speculative; furthermore, assuming that they are sound, the practical difficulties which may be involved in securing individual rent adjustments by the landlords entitled to them can hardly be urged as legal grounds for granting a blanket increase to all landlords, irrespective of the existence of hardship or the degree thereof. Moreover, even if the third and fourth findings are said to be unsupported by the evidence and are completely disregarded, it seems to us that we must approve the Board's recommendation on the basis of its second finding, standing alone, for if there is no reliable evidence, in compliance with the Handbook criteria, substantiating necessity for a general increase, the Board was not compelled, indeed, was not authorized, to recommend that any such increase be granted. For the same reason, the Expediter would not have been bound to approve such a recommendation if it had been made.
 
 
 35
 Orders will enter approving the recommendation and dismissing the complaints.
 
 
 
 Notes:
 
 
 [1]
 It has been assumed by complainants, as well as by the Housing Expediter, that the instructions contained in this 1948 Handbook were properly applicable to the present proceeding before the Board, although the proceeding was begun after the passage of the Housing and Rent Act of March 30, 1949, which amended Section 204(b) of the Housing and Rent Act of 1947, so as to provide that in making and recommending "individual and general adjustments to remove hardship or to correct other inequities, the Housing Expediter and the local board shall observe the principle of maintaining maximum rents for controlled housing accommodations, so far as is practicable, at levels which will yield to landlords a fair net operating income from such housing accommodations." It was not until November, 1949, that the Housing Expediter issued his revised Handbook amending instructions to advisory boards as he deemed appropriate in view of the 1949 statutory changes. We shall assume, as the parties have done, that the recommendation made by the Local Board here is to be tested by the criteria laid down in the 1948 Handbook
 
 
 [2]
 It does not seem that the Act authorizes the court to designate a particular procedure to be followed by a local board in making its recommendation and to condition its approval of the recommendation on compliance with such procedure. The language of the Act is: "If the court determines that the recommendation or decision is not in accordance with law, or that the evidence in the record before the court, including such additional evidence as may be adduced before the court, is not of sufficient weight to justify such recommendation or decision, the court shall enter an order disapproving such recommendation or decision;otherwise it shall enter an order approving such recommendation or decision." (Italics added.)