HEIRS OF ANTONIO BERNAT, Petitioners and Appellants, *v.* JUAN T. PEÑAGARÍCANO, ECONOMIC STABILIZATION ADMINISTRATOR, Respondent and Appellee.

No. 52.   Decided February 19, 1962.

*Harry M. Besosa* for petitioners. *Víctor M. Marchand, Nieves Agostini Torres,* and *Miguel Franquiz Ventura* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On July 30, 1959, the Economic Stabilization Administrator issued an order fixing a monthly rent of $340.70 for the second floor of house No. 150, Eugenio María de Hostos Street, of Arecibo, which floor was devoted to hotel business. In view of the existing deterioration, the rent was reduced temporarily to $299 until the deterioration was corrected, and thereafter the rent would be $340.70. This determination of the Administrator was confirmed by the Arecibo Part of the Superior Court—§ 7 of Act No. 464 of 1946 (Sess. Laws, p. 1326, 17 L.P.R.A. § 187 (1961 Cum. Supp.))—and the matter is now before this Court on review.

According to the record of the Administration, the history of the matter is as follows: The appellant has occupied these business premises since 1929, as tenant, for which she paid a rent of $125 monthly. On October 1, 1942, that was the rent paid. In December 1950, the rent was increased to $130.30, and in 1954 to $133.25. In 1957, it was reduced to $99.50 because of deterioration, and on March 14, 1958 it was restored to the previous amount. As of October 1, 1958 it was again reduced to $91.60 because of considerable deterioration in the premises.

The present landlady acquired the property in 1944, while it was occupied by the tenant. On February 12, 1959, the landlady applied to the Administrator for an increase in rent, alleging that the previous basic rent of $125 was due to the existing friendship between her and her family and the tenant and her family, to her determination and that of her husband not to increase the rent to the tenant as long as the latter was educating her children, and to the gratitude which they owed the tenant and her husband for having helped her with the purchase of the house in 1944. She alleged that the situation at present had changed because the tenant had become rich and prospered, being the owner of another hotel business facing the principal square of Arecibo. After the usual proceedings and hearings at which the parties were heard, the Administrator issued the order to which we have referred increasing the rent to $340.70, which was forthwith reduced to $299 until the deterioration was corrected.

The Administrator fixed the rent at $340.70 as follows: he took into consideration the rents paid for ten business premises situated on De Diego Street of Arecibo, having areas which fluctuated between 1,138 and 2,710 square feet. This computation resulted in a rent of $957 for 18,291 square feet of premises, or a coefficient of .0523 per square feet. Since the premises involved in this case had 6,514 square

feet, he obtained on the basis of such coefficient a rent of $340.6822 or $340.70.[1]

In his findings of fact the Administrator stated:

"From an examination of the documents filed in the entire record, the Administration is of the opinion that peculiar reasons *must have* undoubtedly existed for renting this property originally for $125, particularly if we take into consideration that the property has the following facilities: 23 bedrooms for two persons each—4 bathrooms—4 toilets—3 waiting rooms—3 dining rooms—1 laundry terrace—1 kitchen—2 stairways with entrance and exit on two streets—several halls joining the different dependencies—continuous balcony around the building.

"The property is situated in the most central part of Arecibo, namely, facing the police headquarters, at some 100 feet from the recreation park, in the heart of the business district, very near the lawful recreation centers, near the courts of justice, at a short distance from the city hall, near the banks Crédito y Ahorro Ponceño and National City, as well as the Banco de Ponce. The lot on which the property is erected is assessed for tax purposes at $23,720. The structure for tax purposes is assessed at $21,610, making a taxable total of the entire property of $45,330. The annual tax is $1,137.78. According to the landlady's contention, the property is worth over $50,000 irrespective of its state of deterioration. According to another contention of the landlady, other expenses are incurred in the property because of the purposes to which the tenant devotes it, namely, the operation of a hotel business."

Further on:

"The *peculiar* circumstances which justified the fixing of a rent of $125 have already disappeared, and it would not be fair to maintain such a small rent for a property as that above described."

---

[1] The tenant objected to the fact that these comparable premises were situated on a street of greater commercial importance than De Hostos Street. Except with respect to the areas, the record does not disclose what class of premises they were, the type of construction, or the cost of constructing them, their advantages of operation, the businesses to which they were devoted, and other indexes of *similarity* proper for comparison. In order to decide this case it is not necessary to consider that aspect, and we will therefore assume, without deciding, that the method employed in fixing the amount of the rent was correct.

In deciding a motion for reconsideration made by the tenant, the Administrator stated:

"From a comparative study made by the Administration there appears a significant discrepancy between the rent for similar premises and the freeze rent. The Administration should not be too strict as respects the confirmation of the so-called special relations. *We should find the best demonstration of its existence in the difference between both rents.*" (Italics ours.)

In his brief before this Court the Administrator stated his position at law as follows:

"As a general rule, this Administration is most careful in changing its freeze rents, but in this case we believe that we serve better the interests of justice by acting as we did. The property in question has the following facilities: 23 bedrooms for two persons each—4 bathrooms—4 toilets—3 waiting rooms —3 dining rooms—1 laundry terrace—1 kitchen—2 stairways with entrance and exit on two streets—several halls connecting the different dependencies—continuous balcony around the building—the property is situated in a central place of Arecibo, about 100 feet from the recreation park, in the heart of the business district, very near the lawful recreation centers, the courts of justice and several banks, and is assessed for tax purposes at $48,000.

"As it appears from the record, *it was logical to infer that some peculiar circumstance must have existed* for such a low freeze rent to prevail." (Italics ours.)

He made it clear that although the landlady had alleged kinship, the reason was the existence of *peculiar circumstances.*

■ Section 6 of the Reasonable Rents Act—17 L.P.R.A. § 186 (1961 Cum. Supp.)—prohibits the collection of any rent higher than that paid on October 1, 1942, except as therein provided. The Administrator was authorized to fix a reasonable rent decreeing increases or reductions in the prevailing rent, and it was provided, among other things,

that: "If because of relationship or other personal or special relations between the landlord and the tenant or due to peculiar circumstances, the rent earned on October 1, 1942, was substantially lower than the rent earned in Puerto Rico for *similar* dwellings or buildings on that same date, the Administrator shall, at the request of the landlord, fix the reasonable rent in accordance with the standards established in this Act."

■ We have said and repeated that the courts shall not set aside or alter the findings of fact of the Economic Stabilization Administrator if there is a rational basis in the record therefor. *Ledesma, Administrator* v. *District Court*, 73 P.R.R. 379; *Adm'r of Econ. Stab.* v. *Superior Court*, 75 P.R.R. 419; *Mejías* v. *District Court*, 79 P.R.R. 299; *García* v. *Superior Court*, 82 P.R.R. 651.

■ However, there is nothing in the record of this case to show that the $125 rent which was being paid on October 1, 1942, and which by operation of the law was fixed as the legally permissible rent until such time as it was changed or substituted by the Administrator for the reasons provided by the Act, was due to the existing kinship or other personal or special relations between the owner and the tenant; or that it was due to the existence of peculiar circumstances which rendered such rent substantially lower than the rent paid on that date for similar dwellings or buildings. As a matter of fact, the Administrator did not establish with facts the existence of such special relations or peculiar circumstances, and neither could he do so because there was no basis in the record.[2]

---

[2] The landlady did not in fact fix this rent originally, for she became the owner of the property in 1944, subsequent to the date the $125 rent was frozen by law. She insisted on her testimony that, in view of the considerations mentioned respecting the tenant and her family, the rent had not been *increased*. The landlady appeared at the hearing without legal assistance, and there is no question that she erroneously believed that she was free to increase the rent to the tenant and that she did not

■ As it appears from his statements, from the fact that the rental for these premises was much lower than that paid for comparable business premises, the Administrator inferred, also as a matter of fact, that peculiar circumstances had existed, wherefore he was authorized to modify the basic rent. Such inference was an error of law. The Act provided that the maximum legal rent to be collected was the rent being paid on October 1, 1942, and it authorized the Administrator to substitute the same in the event any of the acts provided by the Act and which warranted a change in the basic rent should occur. *Cf. Aparicio* v. *Peñagaricano, Adm'r, ante,* p. 386; *Infanzón* v. *Economic Stabilization Administration, ante,* p. 441. The Administrator was therefore bound to establish, as a matter of fact, on the basis of the evidence, the existence of the personal or special relations between the owner and the tenant, or of the peculiar circumstances.

■ Once such fact was established, he could then under the law infer that the lower rent was due to these special relations or peculiar circumstances and proceed to increase it. Whenever it is necessary to change a situation of law created by the law itself, it is necessary to establish the existence of the special situation conclusively and not by inference or deduction of the fact itself that a rent appears to be lower.

Apart from the considerations of law governing the decision of the case, this appeal presents another aspect to which we can not be altogether indifferent. The problem actually confronting the Administrator and which he will possibly have to confront more and more has other aspects. The position taken by him and his desire and effort to be fair

do so because of those considerations. In other words, the landlady did not invoke such relations as a factor of the rent already frozen, but as a reason for not increasing it in the erroneous belief that she could have done so. On the other hand, no special relations between the former owner and the tenant which would affect the original $125 rent were established.

with the parties is highly commendable. There are facts and circumstances in the record indicative of the fact that the maximum permissible rent might not be fair to the landlady. The taxes practically absorbed the annual rent of the second floor. Because of the public nature of the hotel business, the landlady was required to maintain the property in good condition and to invest frequently in repairs. The business in these premises seemed very productive for the tenant.

■ However, the Administrator has not available in the law he administers the means of making adjustments and exceptions in situations such as these which were available to the federal Administrator under the housing legislation of the Congress. The Emergency Price Control Act of 1942 provided in its § 2(c), 56 Stat. 26, 50 U.S.C.A. App., § 902 (c), that any regulation or order of the Administrator could be established in such form and manner, may contain such classifications and differentiations, and may provide for such adjustments and reasonable exceptions as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of the Act.

As stated by Mr. Justice McAllister in *Kuskin & Rotberg* v. *Porter, Price Administrator*, 153 F.2d 1016 (U.S.E.C.A.), thereafter Congress felt that many unusual circumstances, which needed remedy, were being overlooked by the Administrator, and to ameliorate such conditions it added, in the Stabilization Act of 1944, 58 Stat. 634, a mandatory provision to § 2(c) of the Act of 1942 to the effect that the Administrator under regulations shall provide for the making of *individual* adjustments in those classes of cases where the rents, on the maximum rent date, were substantially higher or lower than the rents generally prevailing for comparable housing accommodations...*Cf. In re Jamestown Defense Rental Area*, 171 F.2d 708 (U.S.E.C.A.).

It so happens that in the declaration of policy of the Rents Act of 1947, § 201(b), 61 Stat. 196, it was provided that the restrictions thereunder should be administered with a view to prompt adjustments where owners of rental housing accommodations are suffering hardships because of the inadequacies of the maximum rents applicable to their housing accommodations, and under procedures designed to minimize delay in the granting of necessary adjustments. In § 204 (b), fixing maximum rents, it was stated that the Housing Expediter shall, by regulation or order, make such adjustments in such maximum rents as may be necessary to correct inequities or further to carry out the purposes of the Act. In making *individual* or general adjustments in order to minimize or correct inequities, there shall be observed the rule of maintaining as far as possible the maximum rents at such levels as will enable the landlord to receive a reasonable net income from such housing accommodations; and in determining whether the maximum rent produces a reasonable net income, due consideration would be given, among others, to factors such as: increase in the property tax, inevitable increase in the operation and conservation, capital improvements, etc. See 50 U.S.C.A., App. § 1894.

As may be readily seen, our Act has not created a sphere of action in which the Administrator may act of his own initiative and with flexibility in the adjustment of rents in order to prevent inequities in individual cases, in the light of the facts and unusual circumstances. Every adjustment of a basic rent—the rent being paid on October 1, 1942—must be based on a reason established beforehand in the Act.

It is unquestionable, at least as respects business premises, that a substantial change of economic values, yield from business, and of costs, has taken place between the situation existing in 1942 and the present situation which justifies a re-examination of the control indexes. But until such time as the Legislative Assembly reviews the standards established

in the Reasonable Rents Act, in the administration of the statute the Administrator can not deviate from those standards even though he believes, as we are sure he believed in this case, that the maximum rent under the law was unfair to the landlady.

█ We are deciding that there is no basis in the record to uphold the Administrator's conclusion that the $125 rent which prevailed on October 1, 1942 was affected by peculiar circumstances. We are not deciding that such factual circumstances did not actually exist.

The judgment appealed from sustaining the action of the Administrator fixing a maximum rent of $340.70 is reversed, and the Arecibo Part of the Superior Court is ordered to remand the matter to the Administrator for further proceedings consistent with the statements herein.